# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3970

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Dale Lynn Ryan, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 16, 1998

Filed: August 20, 1998

_____

Before WOLLMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Dale Lynn Ryan appeals from the district court's[1] denial of his motion for a new trial. We affirm.

---

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

# I.

On January 1, 1990, the Ryan Fun and Fitness Center (the Center) in West Burlington, Iowa, was destroyed in a fire. Two members of the West Burlington Volunteer Fire Department were killed while fighting the fire. After an extensive investigation by federal, state, and local authorities, Ryan, who was the manager of the Center, was charged with arson. See 18 U.S.C. § 844(i). After a lengthy jury trial, he was convicted and sentenced to a 328 month term of imprisonment. Ryan appealed, and a divided panel of this court affirmed his conviction. See United States v. Ryan, 9 F.3d 660, 662 (8th Cir. 1993) (Ryan I). We granted rehearing en banc and vacated the panel opinion. Upon rehearing, we affirmed Ryan's conviction and reinstated the panel opinion as to the other issues that were not considered en banc. See United States v. Ryan, 41 F.3d 361, 362 (8th Cir. 1995) (Ryan II).

On October 30, 1996, Ryan filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure based on newly discovered evidence. He raised three arguments in the motion: (1) that the government had withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963); (2) that newly discovered scientific evidence warranted a new trial; and (3) that his conviction was the product of perjured or false testimony. For a detailed summary of the facts underlying Ryan's conviction and a description of the government's case, see Ryan I, 9 F.3d at 662-64. We will limit our discussion to the facts relevant to this appeal.

On January 2, 1990, the morning after the fire, Carl Svenson and Richard Ward, special agents for the Iowa Fire Marshal's Office, began their investigation. The investigation eventually grew to include numerous local and federal agencies. Early on, Svenson and Ward formed the opinion that arson was the probable cause of the fire. They suspected that a flammable liquid, or liquid accelerant, had been used to start the fire at various points in the building. This conclusion was based on a variety of factors,

including the presence of several deep, charred burn patterns at various locations on the Center's hardwood floors.

In March of 1990, while the ruins were being razed, Svenson removed a large sample of undamaged flooring from one of the Center's racquetball courts and took it to the West Burlington fire station. In January of 1991, Ryan's attorneys and fire analysis expert were shown physical evidence that had been gathered and stored in West Burlington, including this flooring sample.

As its investigation continued, the government became aware that Ryan's planned defense was that the fire had been accidental and that its rapid spread throughout the building was the product of what is known as a "flashover." A flashover occurs when a fire in an area produces sufficient heat to explosively ignite all of the combustible material within the area. The government also discovered that the defense was planning to prove that the deep charring patterns were caused by burning materials falling from overhead structures, an occurrence known as "drop-down."

In July of 1991, approximately two months before Ryan's trial, Svenson took the floor samples to a firefighter training session at a state training facility in Independence, Iowa. Svenson invited Chris Van Fleet, the lead agent in the federal government's investigation, and Donald Peterson, a photographer, to witness tests he had planned for the floor samples.[2] At the session, Svenson unsuccessfully tested the defense's flashover theory. After he was unable to induce a flashover, he poured alcohol on the sample and ignited it. The fuel burned off, but left no deep charring in the sample.

---

[2]Although the government characterizes the tests as an "ad hoc" experiment run during a firefighter training session, we attach more significance to the demonstration. Svenson, with knowledge of the defense's theory, invited a federal investigator and a photographer to accompany him to a site that was more than 120 miles from West Burlington. We agree with the district court that the tests were conducted, at least in part, because of the Ryan investigation.

Svenson then put alcohol and other combustible materials, including pieces of a wall, on a piece of the floor sample and ignited it. This test resulted in deep charring similar to the patterns found at the fire scene. The government had no knowledge of these tests, and thus neither the fact nor the results of the tests were revealed to the defense before the trial.

One of the government's expert witnesses, John Dehaan, a criminalist for the California Department of Justice, testified at trial that the fire had multiple origins and that an accelerant had been used. Before the trial, however, he had expressed some disagreement with Svenson and Ward's theory regarding the cause of the deep charring on the hardwood floors. While Svenson and Ward theorized that the patterns resulted from a poured flammable liquid, Dehaan was of the opinion that not all of the patterns could be attributed exclusively to a flammable liquid. He identified the defense's drop-down theory as a possible cause for some of the patterns. His difference of opinion with Svenson and Ward was not disclosed to the defense.

The government's case focused on evidence suggesting that the fire originated in as many as seven areas of the building. One of those areas, the Center's sauna, contained a large wooden floor grate. This grate's post-fire condition revealed that although it had been badly charred on its topside, the underside of the grate was only slightly charred. Although defense counsel did not view the grate prior to the trial, they knew that it had survived the fire and that they could have examined it upon request.

On August 23, 1991, Ryan filed a "Production/Brady Request" seeking production of, *inter alia*, tests, reports, evidence regarding burn patterns, and any differing opinions of government experts. Ryan contends that the government's failure to disclose the burn tests, Dehaan's full opinion, the sauna grate, and other fire debris were covered by this request.

-4-

## II.

We review a district court's denial of a motion for new trial based on newly discovered evidence for abuse of discretion. See United States v. Hiveley, 61 F.3d 1358, 1361 (8th Cir. 1995) (per curiam); United States v. Costanzo, 4 F.3d 658, 667 (8th Cir. 1993). This standard also applies where, as here, a defendant seeks a new trial premised upon a Brady claim. See United States v. Stuart, No. 97-1671, slip op. at 3 (8th Cir. July 31, 1998); United States v. Kern, 12 F.3d 122, 126 (8th Cir. 1993); United States v. Williams, 81 F.3d 1434, 1437 (7th Cir. 1996). This deferential standard of review is especially appropriate in the context of a lengthy, hard-fought, highly charged case like the present one. As the Seventh Circuit observed in Williams:

> Having watched the jury as they listened to the testimony, having listened to the testimony and the arguments himself, having his finger as it were on the pulse of the trial--a trial that occupied 28 days scattered over four months--the district judge was in a better position than we to weigh the imponderables involved in a judgment of prejudice.

81 F.3d at 1440.

## A.

In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To establish a Brady violation, Ryan must demonstrate that the government suppressed evidence, that the evidence was exculpatory, and that the evidence was material either to guilt or punishment. See United States v. Duke, 50 F.3d 571, 577 (8th Cir. 1995). Evidence is material under Brady "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Kyles v. Whitley,

514 U.S. 419, 433-34 (1995) (quoting <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Clemmons v. Delo</u>, 124 F.3d 944, 9949 (8th Cir. 1997) (citing <u>Bagley</u>, 473 U.S. at 682). However, materiality is not established through the mere possibility that the suppressed evidence might have influenced the jury. <u>See</u> <u>Knox v. Iowa</u>, 131 F.3d 1278, 1283 (8th Cir. 1997).

The district court concluded, and the government appears to concede, that both the burn tests and Dehaan's disagreement with other government experts were both exculpatory and unavailable to Ryan. The question becomes, then, whether the evidence was material under <u>Bagley</u> and <u>Kyles</u>. It is important to remember that a materiality determination is not a sufficiency of evidence test. <u>See</u> <u>Kyles</u>, 514 U.S. at 434. It follows that once a constitutional error is found, we need not continue with a harmless-error review. <u>See</u> <u>id.</u> at 435. These principles, however, do not restrict our consideration of the untainted evidence that was presented to the jury. "Although it is not enough that the untainted evidence be sufficient for conviction, that evidence must not be ignored in the making of the determination whether there is a reasonable likelihood that the outcome would have been different had the government not misbehaved." <u>Williams</u>, 81 F.3d at 1438 (citations omitted). In other words, we must consider what the government's case would have looked like if the defense had had access to the burn tests and had been aware of Dehaan's disagreement with Svenson and Ward.

Ryan contends that the cause of the floor burn patterns was vital to the government's case: "Without multiple pools of liquid accelerant, as posited by the Government at trial, there was no evidence of multiple or separate, simultaneous fires. The only way the government tried to prove these multiple pools of accelerants was the floor burn patterns." Reply Brief for Appellant at 6. Our review of the record reveals a different depiction of the government's case. In order to convict Ryan, the government had to prove beyond a reasonable doubt that he "maliciously [damaged or

destroyed] . . . by means of fire or an explosive, any building, vehicle or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i). We conclude that the presence of the floor burn patterns was merely a small part of the government's effort to meet this burden.

Some of the government's strongest evidence came from several firefighters who testified about their experiences battling the flames. They recounted observing two distinct and separate glowing areas on the roof approximately 50 feet apart, low bluish flames in one room that would rekindle when doused with water, fires that required inordinate amounts of water to extinguish, only to reignite, and an isolated interior fire within the Center's sauna. The firefighters' testimony contained no references to the hardwood floor burn marks. Moreover, government experts testified regarding numerous clues that pointed to arson, including post-fire observations of several hot spots, burn patterns on walls that appeared to burn in a downward direction, carpet burns that were consistent with the use of a flammable liquid, and a post-fire analysis of the Center's structure that suggested a multiple-origin fire. The presence of the hardwood floor burn patterns, then, was only a small part of the government's well-supported theory that the fire was intentionally set.[3]

We also note the limited exculpatory value of both the burn tests and Dehaan's disagreement with other government experts. From the standpoint of controlled testing conditions, Svenson's burn tests were performed under less-than-ideal circumstances. Additionally, Svenson was unable to produce a flashover, the defense's theory for the rapid spread of fire. Likewise, Dehaan's initial misgivings about the cause of the burn patterns were adequately presented at trial. During vigorous cross-examination by

---

[3]We also observe that although Ryan strenuously asserts that the floor burn patterns were a key ingredient to the government's case, he undertook no burn testing of his own.

Ryan's counsel, Dehaan, although adhering to his opinion that an accelerant was used to start the fire, admitted that some of the burn patterns could have resulted from drop-down.

In light of the foregoing record, we conclude that the <u>Brady</u> evidence would have had a negligible impact on the jury's decision. Thus, it is not reasonably probable that the evidence would have changed the outcome had it been disclosed. The district court therefore did not abuse its discretion in denying a new trial on this issue. <u>See</u> <u>Kern</u>, 12 F.3d at 126.

Ryan also argues that the government suppressed exculpatory evidence by inadequately informing him that the sauna grate and other fire debris samples were in the government's possession. We disagree. The record fully supports the district court's finding that the sauna floor grate and the fire debris samples were not suppressed. The defense was notified of their existence and that the items were available for inspection and testing.

Ryan's remaining <u>Brady</u> arguments lack merit and do not warrant further discussion. Accordingly, we hold that the district court did not abuse its discretion when it refused to grant Ryan a new trial based on the alleged <u>Brady</u> violations.

**B.**

Ryan asserts that the district court erroneously denied his motion for a new trial based on new scientific evidence. His proffered scientific evidence, purportedly based upon new scientific principles, techniques, and technology, included burn tests and computer modeling performed by his retained experts, as well as burn tests performed by government fire protection agencies.

There are five prerequisites to the grant of a new trial on the ground of newly discovered evidence: (1) the evidence must have been discovered after the trial; (2) the failure to discover must not be attributable to a lack of due diligence on the part of the movant; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be likely to produce an acquittal if a new trial is granted. See United States v. Duke, 50 F.3d 571, 576-77 (8th Cir. 1995).

Ryan contends that the burn tests, which he maintains are based on new technology, disprove the government's theories of arson. We are not convinced, however, that the tests satisfy the first prong of the newly discovered evidence inquiry. Ryan, who was afforded an adequate opportunity to conduct these types of tests prior to his trial, now seeks to retry his case in his motion for a new trial. His motion is premised, not on the existence of newly discovered evidence, but on the possibility that such evidence would have been revealed had he undertaken similar testing prior to his trial. This is an inadequate basis for the grant of a new trial.

Ryan also argues that computer modeling of the fire, technology purportedly unavailable at the time of trial, is newly discovered evidence that would likely produce an acquittal. We find his argument to be unpersuasive for a number of reasons. First, it is unlikely that sophisticated computer modeling was unavailable in 1991. At the hearing on the motion for new trial, Fred Fisher, Ryan's fire expert, testified that only through recent advances in personal computer capabilities has this type of modeling been made available. On cross-examination, however, Fisher admitted that modeling may have been possible on larger computers at the time of trial. Second, computer modeling is only as reliable as the raw data that are entered into the modeling program. The government's cross-examination of Fisher exposed a number of weaknesses in the assumptions he made prior to modeling the fire. Finally, we conclude that the record before us does not warrant characterizing a computer fire model as newly discovered evidence. Both the raw data and the controlling scientific principles of the fire were

available before trial. Absent a more detailed explanation of technological issues involved, we are unwilling to conclude that the processing of the data via a computer algorithm constitutes newly discovered evidence. The computer technology is not itself newly discovered evidence, but rather creates a method to present evidence -- evidence that was available prior to Ryan's trial. Accordingly, we hold that the district court did not abuse its discretion in denying Ryan's motion for a new trial based on newly discovered evidence.

## C.

Finally, Ryan argues that his conviction was the product of the government's use of perjured testimony. We conclude that his arguments lack merit and warrant little discussion. Although Ryan asserts that the trial testimony of Larry Garmoe, a West Burlington police officer who assisted in the investigation of the case, was false, we have no basis upon which to conclude that Garmoe's testimony, though inconsistent with the recollections of a number of his fellow investigators, rose to the level of perjury. See United States v. Martin, 59 F.3d 767, 770 (8th Cir. 1995) ("A challenge to evidence through another witness or prior inconsistent statements is insufficient to establish prosecutorial use of false testimony"); United States v. White, 724 F.2d 714, 717 (8th Cir. 1984) (per curiam). Similarly, we conclude that Ryan's remaining false-testimony arguments fail to demonstrate perjury on the part of government witnesses.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-