# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

————————————

Nos. 00-3391/3396, 01-1010

————————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Cross-Appellant/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Lonnie Joseph Parker, | * | |
| | * | [PUBLISHED] |
| Appellant/Cross-Appellee. | * | |

————————————

Submitted: May 15, 2001
Filed: October 9, 2001

————————————

Before WOLLMAN, Chief Judge, HANSEN, Circuit Judge, and SCHREIER,[1] District
Judge.

————————————

HANSEN, Circuit Judge.

Lonnie Joseph Parker was convicted of possessing child pornography in violation
of 18 U.S.C. § 2252(a)(4)(B) (1994 & Supp. IV 1998), and was sentenced to 37
months imprisonment. Parker filed a motion for new trial five days before he was
scheduled to report to prison. Parker moved for a new trial on the basis of newly

———————————————

[1]The Honorable Karen E. Schreier, United States District Judge for the District
of South Dakota, sitting by designation.

discovered evidence and an allegation that the government had failed to disclose allegedly exculpatory documents relating to Parker's participation in a police undercover operation in Minnesota. The district court denied Parker's motion, concluding that the documents were neither material nor exculpatory, and Parker failed to establish that the new evidence would result in an acquittal. Parker appeals both his conviction and the denial of his motion for a new trial. The government crossappeals, arguing that the district court erred by refusing to enhance Parker's sentence based upon the sadistic nature of the pictures. See United States Sentencing Commission, Guidelines Manual, § 2G2.2(b)(3) (2000). We affirm the appeal but reverse on the cross-appeal.

## I.

In 1997, Parker relocated from Minnesota to Little Rock, Arkansas, to begin his medical residency at the University of Arkansas. Soon after his move, United States Customs officials began investigating Parker as a recipient of images containing child pornography. Customs officials were alerted to Parker's involvement with child pornography through their investigation of an individual named Freddie Gravely who resided in Michigan. Gravely had sent six pornographic images to an America Online subscriber who was using the screen name "FUNWUN777." The subscriber was Parker.

Parker agreed to cooperate with Customs agents, and during a subsequent interview, Parker informed the agents that his daughter had received the images while visiting an Internet chat room, and that he had reported the incident to the FBI and the National Center for Missing and Exploited Children (NCMEC). The Customs agents were unable to substantiate Parker's assertion that he had contacted either agency. Parker also told the agents that he was told to download and print out the images and send them to both agencies. Parker did not send copies of the images to either agency. Parker offered to provide Customs agents with the name of the FBI agent who

2

instructed him to download the pornographic images, but Parker never followed through with his offer.

Parker invited the Customs agents to his home and executed a consent form, authorizing their search of his home for child pornography. At the agents' request, Parker copied the pornographic images stored on his computer's hard drive onto computer diskettes. The extent of Parker's collection was voluminous. Agents seized the disks and Parker's computer. The next day, Parker requested to meet again with Customs agents. Parker explained to the agents that contrary to what he had reported earlier, he--and not his daughter--had received the child pornography. He stated that he had printed out the images that he received and sent them to the FBI and the NCMEC. Parker stated that he voluntarily continued to receive pornographic images in an attempt to compile a list of suspect pornographers to assist law enforcement officials. When asked by Customs agents for his list of suspects, however, he was unable to provide it. Parker also informed the Customs agents of a previous episode that occurred while he was a fourth-year medical student at the Mayo Clinic, in Rochester, Minnesota, when he received a message from an individual in an Internet chat room. This individual offered to allow Parker to have sex with the man's adolescent daughter, as well as providing pictures of the interlude in exchange for a fee. Parker was told to meet the girl at a Minneapolis-area motel. Parker reported this solicitation to the FBI. FBI agents investigated Parker's complaint and initiated a surveillance operation at the motel; however, neither the individual nor his daughter ever materialized at the motel.

Parker was charged in a five count indictment: three counts of receiving child pornography, one count of possessing child pornography, and one count of criminal forfeiture. Parker filed a motion indicating that he intended to assert a public authority defense because, he contended, he was assisting law enforcement officials in their attempt to identify and apprehend persons sending him pornographic material to his Internet account. At trial, however, Parker presented no evidence on his own behalf.

Thus at the close of the trial, the district court refused to instruct the jury on Parker's reliance upon public authority, concluding the trial record contained insufficient evidence to warrant such an instruction. The jury found Parker guilty of possessing child pornography, and in light of the conviction, Parker conceded the criminal forfeiture. At sentencing, the government sought a four-level enhancement under the Sentencing Guidelines § 2G2.2(b)(3) based upon the sadistic nature of the pictures Parker possessed, which the district court denied. The district court sentenced Parker to 37 months imprisonment.

In support of a subsequent motion for new trial, Parker raised two arguments: (1) that the government failed to turn over exculpatory documents which were linked to Parker's involvement with the FBI in Minnesota, in violation of Brady v. Maryland, 373 U.S. 83 (1963); and (2) that newly discovered evidence warranted a new trial. The district court denied the motion. The court concluded that the evidence was not exculpatory, presentation of the evidence would not have resulted in an acquittal, and the evidence did not satisfy the requirement of Federal Rule of Criminal Procedure 33. Parker appeals both his conviction and the district court's denial of his motion for a new trial. The government crossappeals the district court's refusal to impose a four-level sentence enhancement under USSG § 2G2.2(b)(3).

II.

A. Public Authority Defense

Parker first contends that the district court erred by refusing to instruct the jury on his defense that he acted under public authority when downloading child pornography to his home computer. We disagree. Whether there is sufficient evidence to submit an affirmative defense instruction to a jury is a question of law and reviewed de novo. United States v. Jankowski, 194 F.3d 878, 882 (8th Cir. 1999). The public authority defense requires a defendant to show that he was engaged by a government

4

official to participate in a covert activity.  United States v. Achter, 52 F.3d 753, 755 (8th Cir. 1995).  However,

> [t]he defendant does not have to testify or even offer any evidence; the basis for the defendant's theory may derive from the testimony of government witnesses on direct or cross-examination.  Finally, the evidence to support a theory of defense need not be overwhelming; a defendant is entitled to an instruction on a theory of defense even though the evidentiary basis for that theory is weak, inconsistent, or of doubtful credibility.

United States v. Scout, 112 F.3d 955, 960 (8th Cir. 1997) (internal quotations and alterations omitted).  Parker contends that the evidence that he alerted officials in Minnesota to an individual who was offering the person's teenage daughter for sex was sufficient evidence to warrant a public authority instruction regarding Parker's charged activities in Arkansas.  We fail to see any connection between his alleged assistance in Minnesota and his later activities in Arkansas.  Parker asserts that the evidence demonstrated that an FBI agent had instructed him to download the pornographic images and deliver them to the FBI office in Little Rock, Arkansas.  Even construing the evidence in the light most favorable to Parker, the evidence at trial directly contradicted Parker's assertion.  Law enforcement officials stated that Parker was directed only to deliver the images he had already obtained and had stored on his computer's hard drive to the FBI--a direction he subsequently ignored.  There was no evidence presented that Parker acted on the request or advice of a duly authorized law enforcement official concerning his continued possession and accumulation of child pornography in Arkansas.  The evidence showed Parker was acting on his own; the FBI officers in Arkansas never authorized Parker to download or possess child pornography.  In fact, the trial testimony revealed that a friend of Parker's, who is also a law enforcement officer, warned Parker that possession of child pornography is illegal.  We conclude the district court was correct in declining to instruct the jury on the defense of public authority.

## B. Entrapment by Estoppel

Parker also argues that he was entitled to "exoneration" and that the district court erred by failing to direct a verdict in his favor based upon the application of entrapment by estoppel. Entrapment by estoppel arises when a government official tells a defendant that certain conduct is legal, and the defendant commits what otherwise would be a crime in reasonable reliance on the official representation. United States v. Benning, 248 F.3d 772, 775 (8th Cir.), petition for cert. filed, No. 01-5434 (U.S. July 18, 2001). Parker failed to raise this issue before the district court, and as a result, we review for plain error. We will reverse under plain error review only if the error prejudices the party's substantial rights and would result in a miscarriage of justice if left uncorrected. United States v. McNeil, 184 F.3d 770, 777 (8th Cir. 1999). "Plain error review is extremely narrow and is limited to those errors which are so obvious or otherwise flawed as to seriously undermine the fairness, integrity, or public reputation of judicial proceedings." United States v. Beck, 250 F.3d 1163, 1166 (8th Cir. 2001).

A review of the evidence shows that the trial court did not err in failing to direct the verdict in Parker's favor premised upon entrapment by estoppel. Parker can point to no evidence illustrating that he reasonably relied upon a law enforcement official's assertion that possessing child pornography was legal or that any such assertion was made to him. The evidence instead indicates that Parker was fully aware that his possession of such materials was a crime. Furthermore, Parker failed to comply with law enforcement officers' repeated instruction to deliver any previously obtained material to the appropriate office. We refuse to recognize Parker's claim as a cognizable error. See United States v. Long, 977 F.2d 1264, 1271 (8th Cir.1992) (holding that entrapment by estoppel does not apply when a government official never told the defendant that an illegal activity was permissible); cf. United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993) (declining to address appellant's entrapment by estoppel argument because affirmative defense was not raised in the district court).

C. Insufficient Evidence of Intent

Parker next contends that the evidence was insufficient to establish that he harbored any criminal intent. "[W]e examine the evidence in the light most favorable to the verdict, giving the government the benefit of all reasonable inferences that may logically be drawn from the evidence." United States v. Armstrong, 253 F.3d 335, 336 (8th Cir. 2001) (internal quotations omitted) (alternation in original). We will uphold the jury's verdict provided that an interpretation of the evidence would allow a reasonable juror to find the defendant guilty beyond a reasonable doubt. United States v. Vig, 167 F.3d 443, 447 (8th Cir.), cert. denied, 528 U.S. 859 (1999). The jury may base its verdict in whole or in part on circumstantial evidence. United States v. Smith, 104 F.3d 145, 147 (8th Cir. 1997). The jury convicted Parker for violating 18 U.S.C. § 2252(a)(4)(B) (1994 & Supp. IV 1998), which makes it a felony to

> knowingly possess[] 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if--(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct.

The Supreme Court determined that Congress intended the term "knowingly" to "extend[ ] both to the sexually explicit nature of the material and to the age of the performers." United States v. X-Citement Video, Inc., 513 U.S. 64, 78 (1994).

Parker argues that his reason for possessing child pornography was an honorable one--"to assist law enforcement in combating exploitation of children"--and therefore a reasonable jury could have a reasonable doubt as to his criminal intent in possessing the images. (Appellant's Br. at 21.) We find Parker's challenge unavailing, and the

evidence adduced at trial belies his assertion. When Parker was questioned by Customs agents in Arkansas about his receipt of pornographic images sent to his computer by an individual in Michigan, Parker initially stated his daughter had inadvertently received the images via an Internet chat room. When agents questioned Parker as to why his daughter would be participating in an Internet chat between 2 and 4 a.m, Parker admitted that he was the one who received the images. Parker also told agents he had reported the incident to both the FBI and NCMEC. Neither agency had a record of Parker's report, however. Agents repeatedly told Parker to print out the images that he had received and that were presently stored on his computer's hard drive and deliver them to law enforcement officers, but Parker stated he did not have the time to do this. Finally, Parker told agents that he knew it was illegal to transport child pornography across state lines. The evidence viewed in the light most favorable to the government clearly establishes that the jury was reasonable in its conclusion.

## III. Denial of Motion for New Trial

Parker asserts that the district court abused its discretion by denying his motion for a new trial. In support of his motion, Parker argued that the government failed to disclose exculpatory evidence as directed by Brady v. Maryland. He states that the government was required to disclose a fax copy of a police report and cover sheet held in its possession and sent from an FBI agent in Minnesota to a local police department in Minnesota. The fax disclosed that Parker had contacted the FBI regarding a teenage girl who was offered to him for sex by an Internet chat room participant. Parker contends that this fax evinces that he was cooperating with the FBI in attempting to apprehend the individual who made the offer, and this evidence was needed for him to lay the foundation for his public authority defense and adequately cross-examine government witnesses at trial. We review for an abuse of discretion the district court's denial of a motion for new trial. United States v. Ryan, 153 F.3d 708, 711 (8th Cir. 1998) ("This standard also applies, where as here, a defendant seeks a new trial premised upon a Brady claim."), cert. denied, 526 U.S. 1064 (1999).

8

Under <u>Brady</u>, the defendant must establish that (1) the evidence at issue is material and favorable to the defendant; (2) the evidence was suppressed by the government; and (3) the defendant was prejudiced by the suppression in that there is "'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>Strickler v. Greene</u>, 527 U.S. 263, 280 (1999) (quoting <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985)). The district court found that any <u>Brady</u> violations by the government did not compromise Parker's right to a fair trial. We agree with the district court that the documents were neither material nor exculpatory to his charge of possessing child pornography in Arkansas. Parker's contact with law enforcement in Minnesota was over a year prior to Customs agents in Arkansas investigating him. The substance of the documents in no way indicates that Parker was advised by law enforcement officers to assist with their investigation in Minnesota. Moreover, this evidence could be viewed as inculpatory because it shows that Parker had been involved with child pornography since 1996. Thus, the government's nondisclosure of this evidence does not violate <u>Brady</u>, and the district court did not abuse its discretion by denying the motion for new trial on this ground.

Parker also sought a new trial based upon newly discovered evidence--the same fax copy of the Minnesota police report and cover sheet that are the subject of Parker's <u>Brady</u> allegation. The district court may grant a motion for a new trial "if the interests of justice so require." Fed. R. Crim. P. 33. A defendant seeking a new trial on the ground of newly discovered evidence must prove four factors to prevail: (1) the evidence must have been unknown or unavailable to the defendant at the time of trial; (2) the defendant must have been duly diligent in attempting to uncover it; (3) the newly discovered evidence must be material; and (4) the newly discovered evidence must be such that its emergence probably will result in an acquittal upon retrial. <u>United States v. Zuazo</u>, 243 F.3d 428, 431 (8th Cir. 2001). The district court denied Parker's motion, concluding that there was no reasonable probability that the evidence in the fax would lead to Parker's acquittal upon retrial in light of the extensive evidence against Parker.

We are perplexed as to how Parker can claim that this is new evidence when he was responsible for filing the report with the Minnesota police approximately three and a half years prior to trial. Regardless, the information is not material to his activities in Arkansas. The district court did not abuse its discretion in denying Parker's motion for new trial.

## IV. Government's Cross-Appeal

The government in its cross-appeal argues that the district court erred by failing to grant a four-level enhancement pursuant to USSG § 2G2.2(b)(3). Guidelines § 2G2.2(b)(3) provides that, "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, increase by 4 levels." We review the district court's interpretation and application of the Sentencing Guidelines to the facts de novo. United States v. Hampton, 260 F.3d 832, 837 (8th Cir. 2001). Like the jury and the district court, we have been forced to view the images in this case in order to determine the issues raised--a decidedly distasteful and depressing duty. The images at issue depict the following acts (among others) being inflicted upon minor female children: sexual penetration by a minor girl upon herself by using a large carrot, forced oral sex, an adult male ejaculating into the face and open mouth of a crying baby, and adult males standing over and urinating in the face of a female child.

The Guidelines do not define the terms "sadistic," "masochistic" or "depictions of violence." We therefore turn to the ordinary meaning of the terms to guide our review. See Perrin v. United States, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."); United States v. Martinez-Santos, 184 F.3d 196, 204 (2d Cir. 1999) (stating basic statutory construction rules are used to interpret the Guidelines). Webster's Dictionary defines "violence" as "exertion of any physical force so as to injure or abuse." Webster's Third New International Dictionary 2554 (1986). Given the plain meaning of "violence," it is difficult to imagine that the sexual penetration with a foreign object of a minor female

would not qualify as "violence" even if self-inflicted.  Webster's defines "sadism" as "the infliction of pain upon a love object as a means of obtaining sexual release" (a description that certainly fits the photograph of the crying baby),  "delight in physical or mental cruelty," and the use of "excessive cruelty."  Id. at 1997-98.  These definitions make clear that the terms "violence" and "sadism," as ordinarily used, are not limited to activity involving a rope, belt, whip, chains, or other instruments as the district court would restrict it.  We  determine that when a pornographic image depicts an adult male engaging in the sexual conduct of the nature we have here, the conduct portrayed is sufficiently painful, coercive, abusive, and degrading to qualify as sadistic or violent within the meaning of § 2G2.2(b)(3). See United States v. Turchen, 187 F.3d 735, 740 (7th Cir. 1999) (holding computer image of men urinating on grimacing girl depicted sadistic conduct within Guidelines providing for four-level enhancement); United States v. Canada, 110 F.3d 260, 264 (5th Cir.) (imposing Guidelines enhancement for photographs portraying anal and vaginal penetration of children through the use of sexual devices), cert. denied, 522 U.S. 875 (1997); United States v. Delmarle, 99 F.3d 80, 83 (2d Cir. 1996) (holding insertion of object into child's anus was "excessively cruel" and therefore "sadistic"), cert. denied, 519 U.S. 1156 (1997). We conclude that given the violent and depraved nature of the images, the district court did err in deciding that the conduct portrayed in the photographs was merely deviant and not violent or sadistic so as to warrant the four-level increase in sentence provided for in § 2G2.2(b)(3).  Accordingly, we need not consider whether the conduct depicted also was "masochistic."

V.

For the reasons discussed herein, we affirm Parker's conviction and the district court's denial of a new trial, but we reverse and remand this case to the district court for resentencing consistent with this opinion. Parker's motion to supplement the record is denied.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.