# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 02-2484

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff-Appellee, | * |
| | * |
| v. | *   Appeal from the United States |
| | *   District Court for the |
| James R. Carman, also known as | *   Western District of Missouri |
| Carman Carman, also known as | * |
| Jim Carman, also known as | * |
| James Carmen, | * |
| | * |
| Defendant-Appellant. | * |

_____

Submitted:  November 6, 2002
Filed:  December 23, 2002

_____

Before McMILLIAN, MURPHY, and MELLOY, Circuit Judges.

_____

MURPHY, Circuit Judge.

James R. Carman was convicted by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to 210 months imprisonment. He moved for a new trial claiming that the government had violated his rights under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), by suppressing evidence

favorable to him. The district court[1] denied the motion, and Carman appeals. We affirm.

On November 14, 2000, officers of the Cameron, Missouri police force went to Carman's apartment to arrest him after receiving information that he was manufacturing methamphetamine. They knocked, and Carman came to the door and stepped out into the corridor when he saw who was there. Carman was placed under arrest and requested permission to go inside for more clothes since he was only wearing jeans. The police asked if there were any weapons or other people in the apartment, and Carman responded that his girlfriend was inside and that there was a rifle next to the front door. When they entered the apartment, the police found an assault rifle loaded with a banana clip leaning against the entry door jamb. They asked Carman where it came from, and he replied that he had purchased it at a garage sale. An officer testified at trial that he told Carman on that evening that it was illegal for a convicted felon like him to possess a firearm and that Carman responded that he had understood that only handguns were prohibited.

A federal grand jury indicted Carman for being a felon in possession of a gun.[2] At trial Carman claimed that the gun had been left in his apartment by someone else and that he had only seen it for the first time when he went to open the door for the police and that his comment about the garage sale had been meant sarcastically. He testified that Julie Toni, Keith Akey, and three other people regularly stayed at the apartment and that Akey had a key to the front door. According to his testimony,

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

[2]Carman's criminal record includes felony convictions for second degree burglary, conspiracy to commit burglary, and conspiracy to commit murder. Because of his prior convictions, he was sentenced as an "armed career criminal." See United States Sentencing Commission, Guidelines Manual, § 4B1.4 (Nov. 2000).

Akey, Toni, and the Wheeler brothers had been in the apartment shortly before the police arrived. The jury returned a verdict of guilty, and Carman was sentenced to 210 months.

A police officer testified at the sentencing hearing that Carman and several others had been under surveillance for methamphetamine production for over a month prior to his arrest on November 14, 2000. Following the hearing, defense counsel requested a copy of the police activity logs related to the surveillance. Copies of the logs were then furnished to the prosecutor and to defense counsel. The logs lent some support to Carman's claim that other people had lived in his apartment and that the gun was not his. They indicated that police had received a complaint on October 3, 2000 that two people, including Akey, were residing impermissibly in the same apartment complex in which Carman lived. The logs did not show in which apartment the two were alleged to be staying, but they noted that officers saw Julie Toni enter the apartment complex and spotted Akey in the area on November 6, 2000. Police observed several people with Carman at a convenience store on November 10 and saw him purchase lighter fluid, gloves, and a lighter.[3] The log for that day also reported that two people were seen purchasing three cans of starter fluid at the same store and identified one as the "younger Wheeler boy."

Carman moved for a new trial, arguing that the police logs had not been disclosed to him by the government in violation of his due process rights under Brady v. Maryland, 373 U.S. 83 (1963). He contended that the new evidence supported his claim that the rifle belonged to someone else because it corroborated his testimony that other people stayed in, and had access to, his apartment. He also pointed out that

---

[3]Carman claims that the entry for November 10 shows that on that day he was seen with others at his apartment, but our review of the logs reveals that at most one or two others were seen at the apartment complex.

three cans of starter fluid had been found near the rifle, suggesting that the gun might have belonged to one of the Wheelers.

In its decision on the motion the district court correctly noted that to succeed on a Brady claim, "Carman must establish that the prosecution suppressed evidence, that the evidence was favorable to him, and that the evidence was material to either his guilt or his punishment." United States v. Carman, No. 01-00003-01-CR-W-6, slip op. at 1 (W.D. Mo. May 1, 2002) (citing Johns v. Bowersox, 203 F.3d 538, 545 (8th Cir. 2000)). The court also correctly stated the law that "'[e]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Id. (internal quotation marks omitted) (quoting Strickler v. Greene, 527 U.S. 263, 280 (1999)). After applying these standards, the district court denied the motion. It concluded that the logs were favorable to Carman's theory that someone else owned the weapon, that they were irrelevant to the issue of whether he had constructive possession of it, and that constructive possession is sufficient for conviction under § 922(g)(1), see United States v. Boykin, 986 F.2d 270, 274 (8th Cir. 1993). The court held that the police logs were therefore not material evidence because they would not have changed the result of the trial had they been disclosed to the defense.

On appeal, Carman argues that the district court abused its discretion by denying the motion for a new trial. He contends that the district court improperly applied a sufficiency of the evidence standard in evaluating the materiality of the new evidence, instead of considering the evidence in the context of the prosecution's case. See Kyles v. Whitley, 514 U.S. 419, 434–35 (1995). He argues that the government's case had not included a theory of constructive possession, but that it rested on the theory that Carman had actually owned and possessed the gun. The logs were therefore material when evaluated under the proper standard.

We review a denial of a motion for a new trial based on a <u>Brady</u> claim for an abuse of discretion. <u>United States v. Parker</u>, 267 F.3d 839, 846 (8th Cir. 2001). To establish a <u>Brady</u> violation, a defendant must "demonstrate that the government suppressed evidence, that the evidence was exculpatory, and that the evidence was material either to guilt or to punishment." <u>United States v. Ryan</u>, 153 F.3d 708, 711 (8th Cir. 1998). Evidence is material under <u>Brady</u>, "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>Id.</u> at 712 (internal quotation marks omitted) (quoting <u>Kyles</u>, 514 U.S. at 433–34). A reasonable probability "'is a probability sufficient to undermine confidence in the outcome.'" <u>Id.</u> (quoting <u>Clemmons v. Delo</u>, 124 F.3d 944, 949 (8th Cir. 1997)). Materiality is to be determined not by "a sufficiency of the evidence test," but rather by consideration of "what the government's case would have looked like if the defense had had access to the [suppressed evidence]." <u>Id.</u> Materiality "is not established through the mere possibility that the suppressed evidence might have influenced the jury." <u>Id.</u>

An examination of the record reveals that the district court did not employ a sufficiency of the evidence test. Although it is true that the government had argued that he actually owned the gun, Carman is wrong in his contention that the government had never presented a theory of constructive possession. The jury instructions included a definition of constructive possession, and in his closing argument the prosecutor specifically told the jury that "the law recognizes several kinds of possession[, including] . . . . constructive possession." We thus cannot say that the district court ignored the context of the government's case in considering the materiality of the police logs, for constructive possession was among the issues in the case.

The record supports the district court's conclusion that the police logs were immaterial. As the court correctly noted, constructive possession is sufficient for conviction under § 922(g)(1) and it can be established "by a showing that the firearm

was seized at the defendant's residence." <u>Boykin</u>, 986 F.2d at 274. While the police logs might support Carman's claim that he did not own the rifle, they do nothing to alter the undisputed fact that the gun was found in his apartment. The logs provide little support for his claim that the rifle had been placed in his apartment immediately before the police arrived on November 14, since the last cited entry had been made on November 10. Moreover, the evidence in the logs that others had entered Carman's apartment is merely cumulative of his direct testimony at trial. As Carman's counsel recognized at oral argument, the evidence provided by the police logs is also inculpatory in that it indicates he was involved in manufacturing drugs, thus suggesting a motive to have a gun ready to protect that operation. After studying the record, we conclude that it is not reasonably probable that the police logs would have changed the outcome of the trial had they been disclosed.

We conclude that the district court did not err or abuse its discretion in denying the motion for a new trial, and we therefore affirm the judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-