# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1685

_____

| | | |
|---|---|---|
| John A. Mandacina, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| United States of America, | * | [PUBLISHED] |
| | * | |
| Appellee. | * | |

_____

Submitted: December 9, 2002

Filed: May 16, 2003 - (Corrected 5/20/03)

_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

A jury convicted John A. Mandacina (Mandacina) of conspiracy, retaliating against an informant, interstate murder-for-hire, and use of a firearm during a crime of violence. The district court sentenced Mandacina to life imprisonment. We affirmed. United States v. McGuire, 45 F.3d 1177 (8th Cir. 1995). Mandacina filed a motion and supplemental motion pursuant to 28 U.S.C. § 2255 (2000), raising

multiple <u>Brady</u> claims and ineffective assistance of counsel claims. The district court[1] denied the original motion, and dismissed as untimely the claims in the supplemental motion. Mandacina appeals. We affirm the judgment below.

## I.    BACKGROUND[2]

Larry Strada (Strada) provided information to the Federal Bureau of Investigation (FBI) implicating Mandacina in illegal gambling operations in the Kansas City area. On May 3, 1990, Mandacina pled guilty to charges of conducting an illegal gambling business and was sentenced to twelve months imprisonment. Thirteen days later, Strada was gunned down outside his home. The gunman did not remove Strada's jewelry, cash or bank bag. The FBI later assumed control of the murder investigation.

In December 1990, Mandacina's co-defendant, Patrick McGuire (McGuire), and his brother-in-law, Terry Dodds (Dodds), were arrested for bank robbery. Dodds later cooperated with the FBI, and implicated Thomas Earlywine (Earlywine) in several unsolved bank robberies. After the arrest, Earlywine also cooperated with the FBI. Both Dodds and Earlywine implicated Mandacina in Strada's murder. Dodds told the FBI he had overheard a conversation in which Mandacina said he wanted somebody killed for implicating him in criminal activity. Earlywine told the FBI that, in May 1990, Mandacina said he wanted Strada killed and offered to pay McGuire $25,000 to kill Strada.

The FBI also interviewed Frank Angotti (Angotti), a long-term acquaintance of McGuire. Angotti told the FBI he met McGuire for a drink in July 1990. During the meeting, Angotti asked McGuire, "Well, I hear that you did Larry. Did you do

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

[2] A detailed factual summary is provided in <u>McGuire</u>, 45 F.3d at 1180-82.

Larry?" Angotti told the FBI McGuire responded, "Yes." The government charged Mandacina with conspiracy, retaliating against an informant, interstate murder-for-hire, and use of a firearm during a crime of violence.

On August 16, 1993, approximately three weeks before trial, government counsel sent Mandacina's trial counsel a report of a May 19, 1990, interview with Donna Borland (Borland Report). The Borland Report consists of six pages of notes taken during an interview of Borland by two Gladstone, Missouri, police detectives. According to the Borland Report, Borland told the detectives Strada was involved in "fronting money for others to buy drugs." When the detectives asked Borland "why or who might have killed" Strada, Borland told them "[i]t was done because [Strada] had turned some information and names over to the authorities in reference to the buying and selling of drugs." Borland did not provide the detectives with specific names, but said "they were some of the people . . . mentioned earlier" by the detectives. The detectives had previously read Borland a list of names collected in the investigation. Near the end of the interview, Borland told the detectives that "6 or 7 people [were] indicted and this was done within the past several months." Borland also told detectives they needed "to identify and talk with these people, as this is probably where the 'hit' came from."

The record does not reveal whether Mandacina's trial counsel reviewed or investigated the Borland Report or sought additional discovery during the three weeks before trial, which began on September 7, 1993. A jury convicted Mandacina on all counts, and he was sentenced to life imprisonment. After this court affirmed his conviction and sentence, McGuire, 45 F.3d at 1190, Mandacina filed a habeas motion alleging (1) the government failed to disclose exculpatory evidence, (2) Mandacina received ineffective assistance of counsel, and (3) newly discovered evidence required Mandacina's convictions be vacated. After carefully reviewing these claims, the district court dismissed all claims, except the newly discovered

evidence claims relating to footprints discovered at the crime scene. The district court allowed additional discovery on these claims.

On September 27, 2000, twenty days after the district court dismissed all the original claims, except the footprint evidence claims, Mandacina sought leave to file a supplemental section 2255 motion. After allowing discovery, the district court determined the original claims relating to footprint evidence lacked merit, and the newly asserted claims in the supplemental motion were untimely and should be stricken.

On March 4, 2002, the district court granted, in part, Mandacina's extensive application for a certificate of appealability. The court certified two issues for appellate review, one relating to a claim of ineffective assistance of counsel in failing to investigate the Borland Report, and the other relating to the failure to disclose or develop impeachment from Angotti's testimony, whether treated as a Brady violation or an ineffective assistance of counsel claim.

## II.    DISCUSSION

On appeal, Mandacina raises three issues, which are not necessarily consistent with the certificate of appealability. First, Mandacina contends the government violated Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) by failing to provide him with the names of alternate suspects with strong motives to murder Strada, and by failing to disclose evidence proving Angotti, a key prosecution witness, was forced to testify. Second, Mandacina claims his trial attorney failed to investigate alternate suspects and failed to compel the government to release information on other suspects in violation of Strickland v. Washington, 466 U.S. 668 (1984). Third, Mandacina claims his amended motion was timely filed pursuant to 28 U.S.C. § 2255(2) and (4), because the newly asserted claims related back to the original motion, the government prevented him from bringing timely claims, and certain evidence was only recently discoverable through diligent

investigation. Alternatively, Mandacina argues, if subsections 2255(2) and (4) are inapplicable, the statute should be equitably tolled due to circumstances beyond his control and because his newly asserted claims satisfy the "actual innocence" standard.

Initially, we note the Brady and ineffective assistance claims raised here were not previously raised in the original section 2255 motion. Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a section 2255 motion must be filed within one year of the date the conviction becomes final, except in circumstances not present here. 28 U.S.C. § 2255. While Mandacina's original motion was timely filed, his supplemental motion, filed three years later, was not. Therefore, the supplemental motion is time-barred, unless Mandacina can satisfy a relation back analysis.

Pursuant to the Federal Rules of Civil Procedure, relation back of amendments filed after the period of limitations is permitted in certain instances.[3] The relation back doctrine allows untimely claims to be deemed timely by treating the claims as if they had been filed when the timely claims were filed. Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000). "An amendment to a pleading shall 'relate back' to the date of the original pleading only if the claim asserted in the original pleading and the claim asserted in the amended pleading arose out of the same conduct, transaction, or occurrence." United States v. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999) (citing Fed. R. Civ. P. 15(c)(2 )). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." Id. (citations omitted). Thus, only if the Brady claims and the ineffective counsel claims alleged in Mandacina's supplemental section 2255 motion can be said to have arisen out of the same set of facts as his original claims will they relate back for purposes

---

[3] Habeas proceedings are civil in nature; therefore, the Federal Rules of Civil Procedure apply. United States v. Craycraft, 167 F.3d 451, 457 n.6 (8th Cir. 1999).

of deeming the claims timely filed. We review a district court's application of Rule 15(c) for an abuse of discretion. See Craycraft, 167 F.3d at 457 n.6; Davenport, 217 F.3d at 1343 n.4.

### A. Borland Report
#### 1. Amended Brady Claim

In analyzing whether the two Borland Report claims–one raised as a Brady violation claim, and another raised as an ineffective assistance claim–relate back to the original section 2255 motion, the district court recognized the determination presented "a reasonably close question." The district court explained Mandacina's original motion alleged the government failed to disclose exculpatory evidence, "including various physical and other evidence obtained by the Gladstone Police Department and detectives involved in the investigation of Mr. Strada's murder." The original motion also alleged:

> [T]he Government failed to properly disclose . . . any and all information related by Mr. Strada prior to his death in which Mr. Strada implicated any other person in any criminal activity, including any organized crime-related activity. Such information constitutes favorable and exculpatory information in that it establishes a motive for others besides Movant Mandacina to have killed or conspired to kill Mr. Strada. . . .[T]here is a strong factual basis to support a defense theory . . . that Mr. Strada was killed not because of any statements he may have made regarding Movant Mandacina, but instead was killed by others who had a much stronger motive to retaliate against Mr. Strada.

The district court found the original and amended Brady claims both related to evidence obtained by Gladstone Police Department and were factually similar in terms of both "time and type," citing Craycraft, 167 F.3d at 457. However, the district court concluded the amended Brady claim did not relate back to the original motion because the original motion made no mention of the Borland Report, and contained only generalized assertions that evidence obtained by the Gladstone Police Department was withheld. The district court declared "[i]t is insufficient that the

amended claims and the original ones are both <u>Brady</u> claims, just as it was insufficient in <u>Craycraft</u> that both sets of claims alleged ineffective assistance of counsel."

On this claim, the district court construed <u>Craycraft</u> too narrowly and committed an abuse of discretion. In <u>Craycraft</u>, this court determined the "original complaint alleged deficiencies of representation distinctly separate from the deficiency alleged in his amendments." We explained that an attorney's failure to file an appeal represents a "separate occurrence in both time and type" from an attorney's failure to pursue a downward departure for substantial assistance or an attorney's failure to object to the type of methamphetamine. We explained this was so because the original petition alleging an ineffective assistance of counsel claim for failure to file an appeal would unlikely provide notice of "such a different sort of theory." <u>Craycraft</u>, 167 F.3d at 457.

Unlike <u>Craycraft</u>, Mandacina's original section 2255 motion does not allege <u>Brady</u> violations separate and distinct from the violation alleged in the supplemental motion. Although Mandacina's original motion did not refer specifically to the Borland Report, the original motion referred to <u>Brady</u> violations involving the government's failure to disclose "any and all" investigative information obtained by Gladstone Police Department detectives supporting a defense theory that, before he died, Strada implicated other persons involved in organized criminal activity who possessed a stronger motive than Mandacina to retaliate against Strada. The <u>Brady</u> claims in the original section 2255 motion referring to evidence of other suspects obtained by the Gladstone Police Department satisfy Rule 15(c) by providing the government with the notice that the statutes of limitation were intended to provide. As such, we conclude the amended <u>Brady</u> claim, alleging the government failed to disclose the Borland Report, relates back to the original motion.

Having determined the amended <u>Brady</u> claim concerning the Borland Report relates back to the original section 2255 motion, we proceed to review the district court's rejection of the claim. Ordinarily, we would remand the claim. However, the district court analyzed the merits of the amended <u>Brady</u> claim based on the Borland Report under 28 U.S.C. § 2255(2) and (4), as well as under the "actual innocence" standard set forth in <u>Schlup v. Delo</u>, 513 U.S. 298 (1995). "We review de novo allegations of <u>Brady</u> violations." <u>United States v. McElhiney</u>, 275 F.3d 928, 932 (10th Cir. 2001) (citation omitted).

To succeed on his amended <u>Brady</u> claim, Mandacina must establish (1) "the prosecution suppressed evidence," (2) "the evidence was favorable to him," and (3) "the evidence was material to either his guilt or his punishment." <u>United States v. Carman</u>, 314 F.3d 321, 323-24 (8th Cir. 2002). To establish materiality in the context of <u>Brady</u>, "the accused must show there is a reasonable probability that if the allegedly suppressed evidence had been disclosed at trial the result of the proceeding would have been different." <u>Drew v. United States</u>, 46 F.3d 823, 828 (8th Cir. 1995). "A 'reasonable probability' is a probability sufficient to undermine the reviewing court's confidence in the outcome of the proceeding." <u>Id.</u>

Following the magistrate judge's pretrial, *in camera* inspection of the police file, the government disclosed the Borland Report to Mandacina's trial counsel on August 16, 1993, approximately three weeks before trial began. Mandacina contends that, in addition to producing the actual Borland Report, the government had a duty to disclose the names of all suspects with strong motives to murder Strada, as well as all facts developed in the investigation of these suspects. The district court properly rejected this argument, declaring "[e]vidence that a movant can discover through his own reasonable investigation is not illegally withheld by the Government within the meaning of § 2255(2), or under <u>Brady</u>," citing <u>United States v. Jones</u>, 160 F.3d 473, 479 (8th Cir. 1998). The district court correctly ruled nothing prevented Mandacina from conducting an expedited investigation of the Borland Report and, if necessary,

-8-

requesting the trial be continued to allow for more investigation. Because the government did not suppress the Borland Report, Mandacina cannot prove a <u>Brady</u> violation.

### 2. Amended Ineffective Assistance Claim

The more difficult question presented on appeal is whether the amended ineffective assistance of counsel claim based on the Borland Report relates back to the ineffective assistance claims contained in the original section 2255 motion. The original section 2255 motion alleged ten claims of ineffective assistance of counsel. Only one of the ten original claims involved trial counsel's failure to discover exculpatory evidence. That particular claim alleged trial counsel failed to discover and investigate footprint evidence found at the crime scene by the Gladstone Police Department. In his original motion, Mandacina alleged that had trial counsel discovered and investigated the footprint evidence, the evidence would have revealed: (1) the footprints came from hiking boots, and (2) McGuire did not wear hiking boots, and, (3) when arrested, McGuire was not wearing hiking boots. Further, the footprints may have revealed a shoe size different from McGuire's shoe size. Such findings, Mandacina alleged, would have been favorable not only to McGuire, the convicted gunman, but derivatively to Mandacina.

While recognizing reasonable minds could differ on the issue, we conclude the district court properly interpreted <u>Craycraft</u> and did not abuse its discretion in finding the amended ineffective assistance of counsel claim based on the Borland Report does not relate back to the original habeas motion. The claims are not sufficiently similar in both "time and type." Although both claims relate to pretrial conduct by counsel and therefore occurred at a generally similar "time," the claims are not similar in "type." The original claim alleged a failure by counsel to *discover* allegedly exculpatory footprint evidence; whereas, the amended claim alleged a failure by counsel to *investigate* the Borland Report. We conclude the district court correctly

ruled the amended ineffective assistance of counsel claim does not relate back to the original motion, and is therefore time barred.

**B.      Angotti Evidence**

**1.      Amended <u>Brady</u> Claim**

Mandacina further contends the prosecution failed to timely disclose Angotti's grand jury testimony and immunity deals and, in doing so, deprived Mandacina of his right to formulate a defense and to confront and impeach a key witness.  In Mandacina's brief, Mandacina argues the original motion alleged "improper conduct in that the prosecution withheld exculpatory evidence . . . which could impeach the witnesses who testified as to Movant's alleged involvement in the crime."  Our review of the original habeas motion reveals Mandacina did not raise a <u>Brady</u> claim related to the government's failure to disclose evidence which could impeach Angotti or other key prosecution witnesses.[4]  Under the section alleging <u>Brady</u> violations, the original motion references Dodds and Earlywine, but does not allege the government withheld impeachment evidence related to them.  We agree with the district court's analysis that each alleged withholding of evidence represents a distinct act, such that the original motion does not provide fair notice of <u>Brady</u> claims not specifically asserted.  Because the amended claim does not relate back, it is time barred.

**2.      Amended Ineffective Assistance Claim**

Mandacina also claims his trial counsel was ineffective in cross-examining Angotti and Earlywine at trial.  In so far as the claim alleges inadequate cross examination of Earlywine, this assertion was not raised in the original motion and is time-barred.  In so far as the claim alleges inadequate cross examination of Angotti, the claim was raised in the original motion and carefully reviewed by the district court. Angotti testified only against co-defendant McGuire, and Mandacina's counsel walked out of the courtroom with Mandacina and remained absent during Angotti's

---

[4]In the original motion, Mandacina primarily discussed Ms. Brock Decastrogiovannimausolf.

testimony. The court referred to an affidavit prepared by trial counsel which explained counsel's "decision to leave the courtroom during Mr. Angotti's testimony was based on his desire to underscore in the minds of the jury the importance of the judge's instruction that the testimony not be considered against movant." The district court concluded counsel's decision represented a "sound strategy decision." We agree and affirm the dismissal of this claim.

### C. Remaining Supplemental Claims

Finally, we reject Mandacina's arguments that his remaining supplemental claims, including the St. John evidence, are timely filed under section 2255(2) and (4) or that the claims relate back to the original motion. We further conclude the district court correctly found Mandacina has not established a claim of actual innocence, and therefore deny his request for equitable tolling. See 8th Cir. R. 47B.

## IV. CONCLUSION

For the reasons set forth above, we affirm the district court's dismissal of the original section 2255 motion and the supplemental section 2255 motion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-