2003 SD 118

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Kevin LEISINGER, Defendant and Appellant.**

**No. 22728.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 25, 2003.

Decided Sept. 24, 2003.

See also 651 N.W.2d 693.

Lawrence E. Long, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, SD, for plaintiff and appellee.

Steven R. Binger, Sioux Falls, SD, for defendant and appellant.

PER CURIAM.

[¶ 1.] Kevin Leisinger appeals the circuit court's affirmance of the magistrate court's denial of his motion for a new trial following his conviction for one count of violating a protection order. We affirm.

FACTS

[¶ 2.] Leisinger and his wife, Cheryl Jacobson, were married for approximately twenty years and commenced divorce proceedings in 1997. On March 24, 2000, Cheryl obtained a protection order that, among other things, restrained Leisinger from coming within a distance of one mile of her rural residence in Minnehaha County.

[¶ 3.] At approximately 5:20 p.m. on August 7, 2000, Cheryl's sister, Carol Brower, and her sister's companion, John (Jack) McCormick, were loading their pickup with some stored furniture from a shed on Cheryl's property. Cheryl was not home at the time. As Brower and McCormick worked, they both observed Leisinger drive by Cheryl's property in his white pickup towing a trailer and skid loader. Knowing of Cheryl's protection order, Brower notified Cheryl of Leisinger's drive-by. On August 8, 2000, Cheryl FAXed a complaint to the Minnehaha County Sheriff that read in pertinent part:

° ***For what this is worth please consider this a complaint.***

As you should be aware of, my ex husband (Kevin Leisinger) is supposed to stay 1 mile from my property as the current Protection Order states. However, yesterday Monday 8/7/00 he went by my house again at 5:20 p.m.

This time apparently hoping to be seen because he was pulling his loader. Carol Brower & Jack McCorrmick ... was [*sic.*] at the end of my driveway getting their things out of the shed & watched him go by. They know Kevin & his truck well. I was not home but they called me & informed me last night. (bolding in original).

[¶ 4.] As a result of Cheryl's complaint, Leisinger was charged with one count of violation of a protection order. *See* SDCL

25–10–13. The case was tried in magistrate court before a jury on February 13, 2001. The State did not call Cheryl as a witness, but relied on testimony from Brower and McCormick. Both of them identified Leisinger as the person who had driven by Cheryl's house on August 7 and neither of them expressed any doubt whatsoever over the accuracy of their identification.

[¶ 5.] Defense counsel reserved his opening statement until commencement of the defense case. During his statement, he attempted to touch upon the acrimony between Leisinger and Cheryl resulting from their divorce, the ensuing series of legal disputes between them, Cheryl's history of filing criminal complaints against Leisinger and Leisinger's civil lawsuit against Cheryl for malicious prosecution.[1] It was defense counsel's intention to establish that these facts motivated Cheryl to suborn perjury from Brower and McCormick in their testimony against Leisinger. The prosecutor objected on relevancy grounds to all such commentary and further discussion of these matters by defense counsel was foreclosed by the trial court.

[¶ 6.] Defense counsel called Cheryl as a defense witness. Counsel inquired as to Cheryl's whereabouts at the time of Leisinger's drive-by and also inquired as to Cheryl's motivation in obtaining the protection order against Leisinger. When Cheryl denied wanting the order to control Leisinger, defense counsel impeached her testimony with a prior recorded statement. The balance of Leisinger's defense was to deny driving by Cheryl's house on August 7 and the presentation of testimony from one of his employees that he was actually the person who had driven Leisinger's pickup past Cheryl's house on that date.

[¶ 7.] The jury ultimately returned a verdict finding Leisinger guilty of the protection order violation. On March 1, 2001, the trial court sentenced him to a $200 fine and a 180 day suspended jail sentence.

[¶ 8.] During discovery relating to the ensuing civil lawsuit between Leisinger and Cheryl, a copy of a FAX Cheryl had sent to the Minnehaha County Sheriff's Office on October 6, 2000 came to light. The FAX consisted of a log Cheryl had kept of her contacts with Leisinger since early 2000. The log included the following reference for August 7, 2000, the date of Leisinger's protection order violation:

8/7/00 *Monday.* I met Kevin on the road & John was along with me. Later, the woman helping Kevin called from a **pay phone** & told mom her name was Cindy & she saw me at the Gold Rush. I was there for an hour. (bolding in original).

[¶ 9.] Based upon this newly discovered evidence, Leisinger's defense counsel filed a motion for a new trial on August 16, 2001. Counsel referred to the objections to his opening statement during trial and asserted that this new evidence would have supported his argument that Cheryl's credibility was in question and that Cheryl was motivated to suborn perjury from the State's chief witnesses, Brower and McCormick.

[¶ 10.] The trial court held a hearing on the new trial motion on August 30, 2001 and continued it on September 21. At the close of the hearing, the trial court made

1. Leisinger was ultimately successful in his civil lawsuit against Cheryl and a jury returned a verdict of $133,755 in his favor on May 23, 2001, approximately three months after this criminal case was tried. This Court later affirmed the verdict, but reduced the award of $120,000 in punitive damages to $25,000. *See Leisinger v. Jacobson*, 2002 SD 108, ¶ 25, 651 N.W.2d 693, 701.

an oral ruling denying the motion and subsequently entered conforming findings of fact and conclusions of law and a written order. Leisinger appealed the denial of his new trial motion to the circuit court which affirmed. Leisinger now appeals to this Court.

## ISSUE

[¶ 11.] **Did the trial court abuse its discretion in denying Leisinger's motion for a new trial?**

[¶ 12.] Initially, there is some discrepancy in the briefs over the standards by which to review the denial of Leisinger's new trial motion. As set forth in *State v. Gonzalez*, 2001 SD 47, ¶ 11, 624 N.W.2d 836, 839, this Court has traditionally employed a four-part test to identify error in the denial of a new trial motion premised upon the prosecution's failure to disclose material evidence.[2] That four-part test, however, was adopted by this Court in *Ashker v. Solem*, 457 N.W.2d 473, 477 (S.D.1990) and was adapted from language in the United States Supreme Court's decision in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The Supreme Court has issued decisions in this area subsequent to *Agurs* that have refined its analysis. *See e.g. Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Strickler v. Greene*, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). These refinements call into question the validity of at least the fourth part of the *Ashker* test requiring the defense to request evidence. As recently noted in *Strickler*, 527 U.S. at 280, 119 S.Ct. 1936, "the duty to disclose [material] evidence is applicable even though there has been no request by the accused."

[¶ 13.] Given the obvious question over the continuing viability of the *Ashker* analysis in light of Supreme Court developments in this area, *Ashker's* four-part test as recently applied in *Gonzalez* is not utilized in this decision for review of the issues presented. Rather, reliance is placed upon more recent analysis by the Eighth Circuit Court of Appeals in *United States v. Carman*, 314 F.3d 321 (8th Cir. 2002) and by the Supreme Court in *Strickler, supra*.

■ [¶ 14.] At the outset, a reviewing court reviews "a denial of a motion for a new trial based on a *Brady* claim for an abuse of discretion." *Carman*, 314 F.3d at 324. The Supreme Court itself outlined the analysis for a *Brady* claim in *Strickler*:

> In [*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ], this Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." We have since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, and that the duty encompasses impeachment evidence as well as exculpatory evidence. Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Moreover, the rule encompasses evidence "known only to police investigators and not to the prosecu-

---

**2.** The test is outlined in *Gonzalez*, 2001 SD 47 at ¶ 11, 624 N.W.2d at 839, as follows:

[A] new trial must be granted if these questions can be answered affirmatively: (1) was the defense unaware of the evi-

dence, (2) is the evidence favorable to the accused, (3) is the evidence material to the defense, (4) did the defense make a request for the evidence[?]

tor." In order to comply with *Brady,* therefore, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police."

\* \* \*

... There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

*Strickler,* 527 U.S. at 280–282, 119 S.Ct. 1936 (some citations omitted).

[¶ 15.] Here, two components of a true *Brady* violation are lacking. The newly discovered evidence consisting of the log page from Cheryl's October 2000 FAX to the sheriff's office is neither favorable to Leisinger nor did prejudice ensue from its suppression.

[¶ 16.] Leisinger repeatedly asserts that the log page establishes Cheryl perjured her testimony during trial and that her perjury supports his argument that she suborned additional perjury from witnesses Brower and McCormick in order to support his conviction. The log page, however, merely indicates that, on the same date as Leisinger's drive-by Cheryl's residence, Cheryl met Leisinger on an unidentified road at an unidentified time and that she was accompanied at that time by someone named John. How this in any fashion impeaches or conflicts with Cheryl's trial testimony or supports Leisinger's assertion that Cheryl suborned perjury from witnesses Brower and McCormick goes unexplained in Leisinger's brief. In fact, the passage from the log page actually supports Cheryl's trial testimony that she was at the Gold Rush Casino on the day of the drive-by.

[¶ 17.] The trial court also found Leisinger's argument unpersuasive. In its findings and conclusions denying Leisinger's new trial motion, it found no nexus between the encounter described in the log page and "the specific incident and facts proven at trial that were the basis for [Leisinger's] conviction[.]" The court concluded in pertinent part:

Absent such a nexus, that fax is irrelevant to the specific charge and facts that supported it regarding his conviction. Irrelevant extraneous information by definition cannot be either material or favorable to the Defendant, and therefore there is no "reasonable probability" that the jury would have acquitted the defendant had it been disclosed.

[¶ 18.] The trial court's determination is well-reasoned and supported by the applicable standards. Given the lack of any reasonable probability that the jury would have acquitted Leisinger had the log page been previously disclosed, there is no showing in this record of prejudice sufficient to establish a *Brady* violation. Therefore, the trial court committed no abuse of discretion in denying Leisinger's new trial motion premised on *Brady.*

■ [¶ 19.] In *Kyles,* the Supreme Court observed that a *Brady* violation not only results from the government's suppression of favorable evidence, but also, "where previously undisclosed evidence reveal[s] that the prosecution introduced trial testimony that it knew or should have known was perjured[.]" *Kyles,* 514 U.S. at 433, 115 S.Ct. 1555. The Court noted that, " 'a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *Id.* (quoting *Agurs,* 427 U.S.

at 103, 96 S.Ct. 2392). Leisinger also attempts to raise an argument under this aspect of *Brady*, asserting that the log page establishes the State's knowing presentation of perjured testimony at his trial. This argument fails, however, for the same reason as Leisinger's first argument, *i.e.,* the log page simply fails to show perjury in the testimony of any witness at Leisinger's trial let alone a knowing presentation of perjured testimony.

[¶ 20.]   Affirmed.

[¶ 21.]   GILBERTSON, Chief Justice, and SABERS, KONENKAMP and ZINTER, participating.

[¶ 22.]   MEIERHENRY, Justice, disqualified.