(Slip Opinion) OCTOBER TERM, 2004 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MAYLE, WARDEN *v.* FELIX

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 04–563.   Argued April 19, 2005—Decided June 23, 2005

Respondent Felix was convicted of murder and robbery in California state court and sentenced to life imprisonment.  His current application for federal habeas relief centers on two alleged trial-court errors, both involving the admission of out-of-court statements during the prosecutor's case-in-chief but otherwise unrelated.  Felix had made inculpatory statements during pretrial police interrogation.  He alleged that those statements were coerced, and that their admission violated his Fifth Amendment privilege against self-incrimination.  He also alleged that the admission of a videotape recording of testimony of a prosecution witness violated the Sixth Amendment's Confrontation Clause.

   Felix's conviction was affirmed on appeal and became final on August 12, 1997.  Under the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U. S. C. §2244(d)(1), Felix had until August 12, 1998 to file a habeas petition in federal court.  On May 8, 1998, in a timely filed habeas petition, Felix asserted his Confrontation Clause challenge to admission of the videotaped prosecution witness testimony, but did not then challenge the admission of his own pretrial statements.  On January 28, 1999, over five months after the August 12, 1998 expiration of AEDPA's time limit and eight months after the court appointed counsel to represent him, Felix filed an amended petition asserting a Fifth Amendment objection to admission of his pretrial statements.  In response to the State's argument that the Fifth Amendment claim was time barred, Felix asserted the rule that pleading amendments relate back to the filing date of the original pleading when both the original plea and the amendment arise out of the same "conduct, transaction, or occurrence set forth . . . in the original pleading," Fed. Rule Civ.

Proc. 15(c)(2). Because his Fifth Amendment and Confrontation Clause claims challenged the constitutionality of the same criminal conviction, Felix urged, both claims arose out of the same "conduct, transaction, or occurrence." The District Court dismissed the Fifth Amendment claim as time barred, and rejected the Confrontation Clause claim on its merits. The Ninth Circuit affirmed as to the latter claim, but reversed the dismissal of the coerced statements claim and remanded it for further proceedings. In the court's view, the relevant "transaction" for Rule 15(c)(2) purposes was Felix's state-court trial and conviction. Defining transaction with greater specificity, the court reasoned, would unduly strain the meaning of "conduct, transaction, or occurrence" by dividing the trial and conviction into a series of individual occurrences.

*Held:* An amended habeas petition does not relate back (and thereby avoid AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the original pleading. Pp. 7–18.

(a) Under §2244(d)(1), a one-year limitation period applies to a state prisoner's federal habeas application. Habeas Corpus Rule 11 permits application of the Federal Rules of Civil Procedure in habeas cases "to the extent [the civil rules] are not inconsistent with any statutory provisions or [the habeas] rules." Section 2242 provides that habeas applications "may be amended . . . as provided in the rules of procedure applicable to civil actions." Federal Rule of Civil Procedure 15(a) allows pleading amendments with "leave of court" any time during a proceeding. Before a responsive pleading is served, pleadings may be amended once as a "matter of course," *i.e.*, without seeking court leave. *Ibid.* Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings "ar[i]se out of the same conduct, transaction, or occurrence." Rule 15(c)(2). The "original pleading" in a habeas proceeding is the petition as initially filed. That pleading must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." Habeas Corpus Rule 2(c). A prime purpose of Rule 2(c)'s demand that petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted," §2243, or the petition instead should be summarily dismissed without ordering a responsive pleading. Habeas Corpus Rule 4. Pp. 7–9.

(b) Under the Ninth Circuit's comprehensive definition of "conduct, transaction, or occurrence," virtually any new claim introduced in an amended habeas petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or

Syllabus

sentence, and commonly attack proceedings anterior thereto. The majority of Circuits define "conduct, transaction, or occurrence" in federal habeas cases far less broadly, allowing relation back only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in both time and type from the originally raised episodes. Under that view, Felix's own pretrial statements, newly raised in his amended petition, would not relate back because they were separated in time and type from the videotaped witness testimony. This Court is not aware, in the run-of-the-mine civil proceedings Rule 15 governs, of any reading of "conduct, transaction, or occurrence" as capacious as the Ninth Circuit's construction for habeas cases. Decisions applying Rule 15(c)(2) in the civil context illustrate that Rule 15(c)(2) relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims. The Court disagrees with Felix's assertion that he seeks, and the Ninth Circuit accorded, no wider range for Rule 15(c)'s relation-back provision than was given the words "conduct, transaction, or occurrence" in *Tiller* v. *Atlantic Coast Line R. Co.*, 323 U. S. 574, 580–581. There, the amended complaint invoked a legal theory not suggested in the original complaint and relied on facts not originally asserted. Relation back was nevertheless permitted. In *Tiller,* however, there was but one "occurrence," the death of the petitioner's husband, which she attributed throughout to the respondent's failure to provide a safe workplace. In contrast, Felix targeted discrete episodes, the videotaped witness testimony in his original petition and his own interrogation at a different time and place in his amended petition. Pp. 9–13.

Felix's contention that the trial itself is the appropriate "transaction" or "occurrence" artificially truncates his claims by homing in only on what makes those claims actionable in a habeas proceeding. Although his self-incrimination claim did not ripen until the prosecutor introduced his pretrial statements at trial, the essential predicate for his Fifth Amendment claim was an extrajudicial event, *i.e.*, an out-of-court police interrogation. The dispositive question in an adjudication of that claim would be the character of the police interrogation, specifically, did Felix answer voluntarily or were his statements coerced. See *Haynes* v. *Washington,* 373 U. S. 503, 513–514. Under Habeas Corpus Rule 2(c)'s particularity-in-pleading requirement, Felix's Confrontation Clause claim would be pleaded discretely, as would his self-incrimination claim. Each separate congeries of facts supporting the grounds for relief, the Rule suggests, would delineate an "occurrence." Felix's and the Ninth Circuit's approach is

boundless by comparison, allowing a miscellany of claims for relief to be raised later rather than sooner and to relate back. If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance. Pp. 13–16.

Felix's argument that a firm check against petition amendments presenting new, discrete claims after AEDPA's limitation period has run is provided by Rule 15(a)—which gives district courts discretion to deny petition amendments once a responsive pleading has been filed—overlooks a pleader's right to amend without leave of court "any time before a responsive pleading is served." That time can be long under Habeas Corpus Rule 4, pursuant to which a petition is not served until the judge first examines it to determine whether "it plainly appears . . . that the petitioner is not entitled to relief." This Court's reading that relation back will be in order so long as the original and amended petitions state claims that are tied to a common core of operative facts is consistent with Rule 15(c)(2)'s general application in civil cases, with Habeas Corpus Rule 2(c), and with AEDPA's tight time line for petitions. Pp. 16–18.

379 F. 3d 612, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, KENNEDY, THOMAS, and BREYER, JJ., joined. SOUTER, J., filed a dissenting opinion, in which STEVENS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 04–563

DENEICE A. MAYLE, WARDEN, PETITIONER *v.* JACOBY LEE FELIX

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 23, 2005]

JUSTICE GINSBURG delivered the opinion of the Court.

This case involves two federal prescriptions: the one-year limitation period imposed on federal habeas corpus petitioners by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U. S. C. §2244(d)(1); and the rule that pleading amendments relate back to the filing date of the original pleading when both the original plea and the amendment arise out of the same "conduct, transaction, or occurrence," Fed. Rule Civ. Proc. 15(c)(2).

Jacoby Lee Felix, California prisoner and federal habeas petitioner, was convicted in California state court of first-degree murder and second-degree robbery, and received a life sentence. Within the one-year limitation period AEDPA allows for habeas petitions, Felix filed a *pro se* petition in federal court. He initially alleged, *inter alia*, that the admission into evidence of videotaped testimony of a witness for the prosecution violated his rights under the Sixth Amendment's Confrontation Clause. Five months after the expiration of AEDPA's time limit, and eight months after the federal court appointed counsel to represent him, Felix filed an amended petition in which he

added a new claim for relief: He asserted that, in the course of pretrial interrogation, the police used coercive tactics to obtain damaging statements from him, and that admission of those statements at trial violated his Fifth Amendment right against self-incrimination. The question presented concerns the timeliness of Felix's Fifth Amendment claim.

In ordinary civil proceedings, the governing Rule, Rule 8 of the Federal Rules of Civil Procedure, requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Rule 2(c) of the Rules Governing Habeas Corpus Cases requires a more detailed statement. The habeas rule instructs the petitioner to "specify all the grounds for relief available to [him]" and to "state the facts supporting each ground."[1] By statute, Congress provided that a habeas petition "may be amended . . . as provided in the rules of procedure applicable to civil actions." 28 U. S. C. §2242. The Civil Rule on amended pleadings, Rule 15 of the Federal Rules of Civil Procedure, instructs: "An amendment of a pleading relates back to the date of the original pleading when . . . the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. Rule Civ. Proc. 15(c)(2).

The issue before us is one on which federal appellate courts have divided: Whether, under Federal Rule of Civil Procedure 15(c)(2), Felix's amended petition, filed after AEDPA's one-year limitation and targeting his pretrial statements, relates back to the date of his original timely filed petition, which targeted the videotaped witness

_____

[1] The Habeas Corpus Rules were recently amended, effective December 1, 2004. Because the amended Rules are not materially different from those in effect when Felix filed his habeas petition, this opinion refers to the current version of the Rules.

testimony. Felix urges, and the Court of Appeals held, that the amended petition qualifies for relation back because both the original petition and the amended pleading arose from the same trial and conviction. We reverse the Court of Appeals' judgment in this regard. An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.

I

In 1995, after a jury trial in Sacramento, California, respondent Jacoby Lee Felix was found guilty of murder and robbery stemming from his participation in a carjacking in which the driver of the car was shot and killed. App. E to Pet. for Cert. 2–7. He was sentenced to life imprisonment without the possibility of parole. App. C to Pet. for Cert. 1–2. The current controversy centers on two alleged errors at Felix's trial. Both involve the admission of out-of-court statements during the prosecutor's case in chief, but the two are otherwise unrelated. One prompted a Fifth Amendment self-incrimination objection originally raised in the trial court, the other, a Sixth Amendment Confrontation Clause challenge, also raised in the trial proceedings.

Felix's Fifth Amendment claim rested on the prosecution's introduction of statements Felix made during pretrial police interrogation. These statements were adduced at trial on direct examination of the investigating officer. Felix urged that the police used coercive tactics to elicit the statements. *Id.,* at 8–9. His Sixth Amendment claim related to the admission of the videotaped statements prosecution witness Kenneth Williams made at a jailhouse interview. The videotape records Williams, a friend of Felix, telling the police that he had overheard a conversation in which Felix described the planned robbery just

before it occurred. When Williams testified at trial that he did not recall the police interview, the trial court determined that Williams' loss of memory was feigned, and that the videotape was admissible because it contained prior inconsistent statements. App. E to Pet. for Cert. 10–13.

On direct appeal, Felix urged, *inter alia*, that the admission of Williams' videotaped statements violated Felix's constitutional right to confront the witnesses against him. He did not, however, argue that admission of his own pretrial statements violated his right to protection against self-incrimination. The intermediate appellate court affirmed Felix's conviction and sentence, *id.,* at 10–13, 17, and the California Supreme Court denied his petition for review, App. F to Pet. for Cert. 2. Felix's conviction became final on August 12, 1997. App. C to Pet. for Cert. 10.

Under AEDPA's one-year statute of limitations, Felix had until August 12, 1998 to file a petition for a writ of habeas corpus in federal district court. See §2244(d)(1)(A). Within the one-year period, on May 8, 1998, he filed a *pro se* petition for federal habeas relief. Felix's federal petition repeated his Sixth Amendment objection to the admission of the Williams videotape, but he again failed to reassert the objection he made in the trial court to the admission of his own pretrial statements. App. G to Pet. for Cert. 1–7. On May 29, 1998, a Magistrate Judge appointed counsel to represent Felix. App. C to Pet. for Cert. 6; App. H to Pet. for Cert. 2. Thereafter, on September 15, 1998, the Magistrate Judge ordered Felix to file an amended petition within 30 days. *Id.,* at 3. On Felix's unopposed requests, that period was successively extended. *Id.,* at 4–5. Pending the filing of an amended petition, the State was not required to interpose an answer.

On January 28, 1999, over five months after the August 12, 1998 expiration of AEDPA's time limit, and eight months after the appointment of counsel to represent him, Felix filed an amended petition. *Id.,* at 5. In this plead-

ing, he reasserted his Confrontation Clause claim, and also asserted, for the first time post-trial, that his own pretrial statements to the police were coerced and therefore inadmissible at trial. App. I to Pet. for Cert. 4. Further, he alleged that his counsel on appeal to the California intermediate appellate court was ineffective in failing to raise the coerced confession claim on direct appeal. *Id.,* at 18–19.[2] In its answer to the amended petition, the State asserted that the Fifth Amendment claim was time barred because it was initially raised after the expiration of AEDPA's one-year limitation period. Felix argued in response that the new claim related back to the date of his original petition. Because both Fifth Amendment and Confrontation Clause claims challenged the constitutionality of the same criminal conviction, Felix urged, the Fifth Amendment claim arose out of the "conduct, transaction, or occurrence set forth . . . in the original pleading," Fed. Rule Civ. Proc. 15(c)(2). App. C to Pet. for Cert. 16.

The Magistrate Judge recommended dismissal of Felix's Fifth Amendment coerced statements claim. Relation back was not in order, the Magistrate said, because Felix's "allegedly involuntary statements to police d[id] not arise out of the same conduct, transaction or occurrence as the videotaped interrogation of [prosecution witness] Kenneth Williams." *Id.,* at 16. It did not suffice, the Magistrate

_____

[2] Because Felix had not presented his coerced statements Fifth Amendment claim on appeal to the California courts, the State moved to dismiss the amended petition on the ground that it contained both exhausted and unexhausted claims. See 28 U. S. C. §2254(b)(1)(A); Brief for Respondent 6–7. Before the Magistrate Judge acted on the motion, Felix presented the coerced statements/ineffective assistance claim to the California Supreme Court in a habeas petition. Opposition to Respondents' Motion to Dismiss in No. Civ. S–98–0828 WBS GGH P (ED Cal.), p. 3. After that court denied the petition without comment, the State withdrew its motion to dismiss. See Request to Vacate Hearing on Motion to Dismiss in No. Civ. S–98–0828 WBS GGH P (ED Cal.), pp. 1–2.

observed, that Felix's Fifth and Sixth Amendment claims attack the same criminal conviction. *Ibid.* Adopting the Magistrate Judge's report and recommendation in full, the District Court dismissed the Fifth Amendment claim as time barred, and rejected the Confrontation Clause claim on its merits. App. B to Pet. for Cert. 1–3.

A divided panel of the Court of Appeals for the Ninth Circuit affirmed the District Court's dismissal of Felix's Confrontation Clause claim, but reversed the dismissal of his coerced statements claim and remanded that claim for further proceedings. 379 F. 3d 612 (2004). In the majority's view, the relevant "transaction" for purposes of Rule 15(c)(2) was Felix's "trial and conviction in state court." *Id.,* at 615. Defining the transaction at any greater level of specificity, the majority reasoned, would "unduly strai[n] the usual meaning of 'conduct, transaction, or occurrence'" by dividing the "trial and conviction [into] a series of perhaps hundreds of individual occurrences." *Ibid.* Judge Tallman concurred in part and dissented in part. In his view, defining "conduct, transaction, or occurrence" under Rule 15(c)(2) "so broadly that any claim stemming from pre-trial motions, the trial, or sentencing relates back to a timely-filed habeas petition" would "obliterat[e] AEDPA's one year statute of limitation." *Id.,* at 618. "While an amendment offered to clarify or amplify the facts already alleged in support of a timely claim may relate back," he reasoned, "an amendment that introduces a new legal theory based on facts different from those underlying the timely claim may not." *Id.,* at 621.

We granted certiorari, 543 U. S. ___ (2005), to resolve the conflict among Courts of Appeals on relation back of habeas petition amendments. Compare 379 F. 3d, at 614 (if original petition is timely filed, amendments referring to the same trial and conviction may relate back); *Ellzey* v. *United States*, 324 F. 3d 521, 525–527 (CA7 2003) (same), with *United States* v. *Hicks*, 283 F. 3d 380, 388–389

(CADC 2002) (relevant transaction must be defined more narrowly than the trial and conviction); *United States* v. *Espinoza-Saenz*, 235 F. 3d 501, 503–505 (CA10 2000) (same); *Davenport* v. *United States*, 217 F. 3d 1341, 1344–1346 (CA11 2000) (same); *United States* v. *Pittman*, 209 F. 3d 314, 317–318 (CA4 2000) (same); *United States* v. *Duffus*, 174 F. 3d 333, 337 (CA3 1999) (same); *United States* v. *Craycraft*, 167 F. 3d 451, 457 (CA8 1999) (same). We now reverse the Ninth Circuit's judgment to the extent that it allowed relation back of Felix's Fifth Amendment claim.

## II

### A

In enacting AEDPA in 1996, Congress imposed for the first time a fixed time limit for collateral attacks in federal court on a judgment of conviction. Section 2244(d)(1) provides: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." See also §2255, ¶6 (providing one-year limitation period in which to file a motion to vacate a federal conviction).[3]

A discrete set of Rules governs federal habeas proceedings launched by state prisoners. See Rules Governing Section 2254 Cases in the United States District Courts.[4] The last of those Rules, Habeas Corpus Rule 11, permits application of the Federal Rules of Civil Procedure in habeas cases "to the extent that [the civil rules] are not inconsistent with any statutory provisions or [the habeas] rules." See also Fed. Rule Civ. Proc. 81(a)(2) (The civil rules "are applicable to proceedings for . . . habeas corpus."). Rule 11, the Advisory Committee's Notes caution,

———————

[3] Section 2255 establishes a separate avenue for postconviction challenges to federal, as opposed to state, convictions.

[4] Habeas corpus proceedings are characterized as civil in nature. See, *e.g., Fisher* v. *Baker,* 203 U. S. 174, 181 (1906).

"permits application of the civil rules only when it would be appropriate to do so," and would not be "inconsistent or inequitable in the overall framework of habeas corpus." Advisory Committee's Note on Habeas Corpus Rule 11, 28 U. S. C., p. 480. In addition to the general prescriptions on application of the civil rules in federal habeas cases, §2242 specifically provides that habeas applications "may be amended . . . as provided in the rules of procedure applicable to civil actions."

The Civil Rule governing pleading amendments, Federal Rule of Civil Procedure 15, made applicable to habeas proceedings by §2242, Federal Rule of Civil Procedure 81(a)(2), and Habeas Corpus Rule 11, allows pleading amendments with "leave of court" any time during a proceeding. See Fed. Rule Civ. Proc. 15(a). Before a responsive pleading is served, pleadings may be amended once as a "matter of course," *i.e.*, without seeking court leave. *Ibid.* Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings "ar[i]se out of the conduct, transaction, or occurrence." Rule 15(c)(2).

The "original pleading" to which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas proceeding. Under Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley* v. *Gibson,* 355 U. S. 41, 47 (1957). Habeas Corpus Rule 2(c) is more demanding. It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." See also Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U. S. C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas

Corpus Rule 4, 28 U. S. C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)). Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:

> **"CAUTION: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date."** Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App. (emphasis in original).

A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted." §2243. Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in district court," the court must summarily dismiss the petition without ordering a responsive pleading. If the court orders the State to file an answer, that pleading must "address the allegations in the petition." Rule 5.

## B

This case turns on the meaning of Federal Rule of Civil Procedure 15(c)(2)'s relation-back provision in the context of federal habeas proceedings and AEDPA's one-year statute of limitations. Rule 15(c)(2), as earlier stated, provides that pleading amendments relate back to the date of the original pleading when the claim asserted in the amended plea "arose out of the conduct, transaction, or

occurrence set forth or attempted to be set forth in the original pleading." The key words are "conduct, transaction, or occurrence." The Ninth Circuit, whose judgment we here review, in accord with the Seventh Circuit, defines those words to allow relation back of a claim first asserted in an amended petition, so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence. Under that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto. See *Espinoza-Saenz*, 235 F. 3d, at 505 (A "majority of amendments" to habeas petitions raise issues falling under the "broad umbrella" of "a defendant's trial and sentencing."); *Hicks*, 283 F. 3d, at 388.

The majority of Circuits, mindful of "Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them]," *id.,* at 388, define "conduct, transaction, or occurrence" in federal habeas cases less broadly. See *id.,* at 388–389; *Espinoza-Saenz*, 235 F. 3d, at 503–505; *Davenport*, 217 F. 3d, at 1344–1346; *Pittman*, 209 F. 3d, at 317–318; *Duffus*, 174 F. 3d, at 337; *Craycraft*, 167 F. 3d, at 457. They allow relation back only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in "both time and type" from the originally raised episodes. *Craycraft*, 167 F. 3d, at 457. Because Felix's own pretrial statements, newly raised in his amended petition, were separated in time and type from witness Williams' videotaped statements, raised in Felix's original petition, the former would not relate back under the definition of "conduct, transaction, or occurrence" to which most Circuits adhere.

We are not aware, in the run-of-the-mine civil proceedings Rule 15 governs, of any reading of "conduct, transac-

tion, or occurrence" as capacious as the construction the Ninth and Seventh Circuits have adopted for habeas cases. Compare *Maegdlin* v. *International Assn. of Machinists and Aerospace Workers*, 309 F. 3d 1051, 1052 (CA8 2002) (allowing relation back where original complaint alleged that defendant union had breached its duty of fair representation by inadequately representing plaintiff because of his gender, and amended complaint asserted a Title VII gender discrimination claim based on the same differential treatment); *Clipper Exxpress* v. *Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F. 2d 1240, 1246, 1259, n. 29 (CA9 1982) (claim asserting that defendant included fraudulent information in rate protests filed with the Interstate Commerce Commission related back to original complaint, which asserted that defendant filed the same rate protests "for the purpose of . . . restricting . . . competition" (internal quotation marks omitted))[5]; *Santana* v. *Holiday Inns, Inc.*, 686 F. 2d 736, 738 (CA9 1982) (original complaint alleging slander and amendment alleging interference with employment relations arose out of the same conduct or occurrence because both were based on defendant's making allegedly untruthful statements about plaintiff's behavior to plaintiff's employer); *Rural Fire Protection Co.* v. *Hepp*, 366 F. 2d 355, 361–362

——————

[5] The dissent asserts that *Clipper Exxpress* is comparable to this case in according Rule 15(c)(2) a "'capacious'" reading. *Post*, at 4, n. 2. *Clipper Exxpress* involved a series of allegedly sham protests, commonly designed to restrain trade, a charge of the pattern or practice type. The amendment in question added a fraud charge, a new legal theory tied to the same operative facts as those initially alleged. *Clipper Exxpress*, 690 F. 2d, at 1259, n. 29. That unremarkable application of the relation-back rule bears little resemblance to the argument made by Felix and embraced by the dissent—that all manner of factually and temporally unrelated conduct may be raised after the statute of limitations has run and relate back, so long as the new and originally pleaded claims challenge the same conviction. See *infra*, at 12–15.

(CA9 1966) (in a Fair Labor Standards Act of 1938 suit alleging minimum wage violations for certain pay periods, amendment asserting the same type of violation during an additional pay period related back), with *Nettis* v. *Levitt*, 241 F. 3d 186, 193 (CA2 2001) (disallowing relation back where Nettis' original complaint alleged that his employer retaliated in response to Nettis' objections to employer's sales tax collection procedure, and amendment alleged retaliation for Nettis' report of payroll and inventory irregularities); *In re Coastal Plains, Inc.*, 179 F. 3d 197, 216 (CA5 1999) (Coastal Plains's claim that creditor interfered with business relations by attempting to sell Coastal Plains to a third party did not relate back to claim based on creditor's failure to return inventory to Coastal Plains, even though both claims were linked to creditor's alleged "broader plan to destroy Coastal [Plains]"); *Sierra Club* v. *Penfold*, 857 F. 2d 1307, 1315–1316 (CA9 1988) (where original complaint challenged the manner in which an agency applied a regulation, an amendment challenging the agency's "conduct in adopting the regulatio[n]" did not relate back). See also *Jackson* v. *Suffolk County Homicide Bureau*, 135 F. 3d 254, 256 (CA2 1998) (although all of plaintiff's 42 U. S. C. §1983 claims arose out of a single state-court criminal proceeding, plaintiff's First Amendment claims did not arise out of the same conduct as the originally asserted excessive force claims, and therefore did not relate back). As these decisions illustrate, Rule 15(c)(2) relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common "core of operative facts" uniting the original and newly asserted claims. See *Clipper Exxpress*, 690 F. 2d, at 1259, n. 29; 6A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1497, p. 85 (2d ed. 1990).

Felix asserts that he seeks, and the Ninth Circuit accorded, no wider range for Rule 15(c)'s relation back provision than this Court gave to the Rule's key words "con-

duct, transaction, or occurrence" in *Tiller* v. *Atlantic Coast Line R. Co.*, 323 U. S. 574, 580–581 (1945). We disagree. In *Tiller*, a railroad worker was struck and killed by a railroad car. His widow sued under the Federal Employers Liability Act, 45 U. S. C. §51 *et seq.*, to recover for his wrongful death. She initially alleged various negligent acts. In an amended complaint, she added a claim under the Federal Boiler Inspection Act for failure to provide the train's locomotive with a rear light. We held that the amendment related back, and therefore avoided a statute of limitations bar, even though the amendment invoked a legal theory not suggested by the original complaint and relied on facts not originally asserted.

There was but one episode-in-suit in *Tiller*, a worker's death attributed from the start to the railroad's failure to provide its employee with a reasonably safe place to work. The federal rulemakers recognized that personal injury plaintiffs often cannot pinpoint the precise cause of an injury prior to discovery. See 5 C. Wright & A. Miller, Federal Practice and Procedure §1215, pp. 138–143 (2d ed. 1990). They therefore included in the Appendix to the Federal Rules an illustrative form indicating that a personal injury plaintiff could adequately state a claim for relief simply by alleging that the defendant negligently operated a certain instrumentality at a particular time and place. See Form 9, Complaint for Negligence, Forms App., Fed. Rule Civ. Proc., 28 U. S. C. App., p. 829. The widow in *Tiller* met that measure. She based her complaint on a single "occurrence," an accident resulting in her husband's death. In contrast, Felix targeted separate episodes, the pretrial police interrogation of witness Williams in his original petition, his own interrogation at a different time and place in his amended petition.

Felix contends, however, that his amended petition qualifies for relation back because the trial itself is the "transaction" or "occurrence" that counts. See Brief for

Respondent 21–23. Citing *Chavez* v. *Martinez*, 538 U. S. 760 (2003) (plurality opinion), Felix urges that neither the videotaped interview with witness Williams nor the pretrial police interrogation to which Felix himself was exposed transgressed any constitutional limitation. Until the statements elicited by the police were introduced at trial, Felix argues, he had no actionable claim at all. Both the confrontation right he timely presented and the privilege against self-incrimination he asserted in his amended petition are "trial right[s]," Felix underscores. Brief for Respondent 21 (emphasis deleted). His claims based on those rights, he maintains, are not "separate," *id*., at 22; rather, they are related in time and type, for "they arose on successive days during the trial and both challenged [on constitutional grounds] admission of pretrial statements," *id*., at 22–23.

Felix artificially truncates his claims by homing in only on what makes them actionable in a habeas proceeding. We do not here question his assertion that his Fifth Amendment right did not ripen until his statements were admitted against him at trial. See *Chavez*, 538 U. S., at 766–767. Even so, the essential predicate for his self-incrimination claim was an extrajudicial event, *i.e.*, an out-of-court police interrogation. The dispositive question in an adjudication of that claim would be the character of Felix's conduct, not in court, but at the police interrogation, specifically, did he answer voluntarily or were his statements coerced. See *Haynes* v. *Washington,* 373 U. S. 503, 513–514 (1963) (voluntariness is evaluated by examining the "totality of circumstances" surrounding the "making and signing of the challenged confession").

Habeas Corpus Rule 2(c), we earlier noted, see *supra*, at 8–9, instructs petitioners to "specify all [available] grounds for relief" and to "state the facts supporting each ground." Under that Rule, Felix's Confrontation Clause claim would be pleaded discretely, as would his self-

incrimination claim. Each separate congeries of facts supporting the grounds for relief, the Rule suggests, would delineate an "occurrence." Felix's approach, the approach that prevailed in the Ninth Circuit, is boundless by comparison. A miscellany of claims for relief could be raised later rather than sooner and relate back, for "conduct, transaction, or occurrence" would be defined to encompass any pretrial, trial, or post-trial error that could provide a basis for challenging the conviction. An approach of that breadth, as the Fourth Circuit observed, "views 'occurrence' at too high a level of generality." *Pittman*, 209 F. 3d, at 318.[6]

Congress enacted AEDPA to advance the finality of criminal convictions. See *Rhines* v. *Weber,* 544 U. S. ___, ___ (2005) (slip op., at 6). To that end, it adopted a tight time line, a one-year limitation period ordinarily running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U. S. C. §2244(d)(1)(A). If claims asserted after the one-year period could be revived simply

_____

[6]The dissent builds a complex discussion on an apparent assumption that claim preclusion operates in habeas cases largely as it does in mine-run civil cases. See *post*, at 9–11. Ironically, few habeas petitions would survive swift dismissal were that so, for the very objective of the petition is to undo a final judgment after direct appeals have been exhausted or are time barred. On judicial and legislative development of standards governing successive habeas petitions, standards that do not track the Restatement of Judgments, see *Schlup* v. *Delo,* 513 U. S. 298, 317–320 (1995); 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure §28.2b, pp. 1270–1275 (4th ed. 2001); Note, Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1113, 1148–1154 (1970). The dissent would read Rule 15(c)(2)'s words, "conduct, transaction, or occurrence," into AEDPA's provisions governing second or successive petitions and motions (28 U. S. C. §§2244(b) and 2255, ¶8), although Congress did not put those words there. Nor is there any other reason to believe that Congress designed AEDPA's confinement of successive petitions and motions with a view to the relation back concept employed in Rule 15(c)(2).

because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance. See 379 F. 3d, at 619 (Tallman, J., concurring in part and dissenting in part) (Ninth Circuit's rule would permit "the 'relation back' doctrine to swallow AEDPA's statute of limitation"); *Pittman*, 209 F. 3d, at 318 ("If we were to craft such a rule, it would mean that amendments . . . would almost invariably be allowed even after the statute of limitations had expired, because most [habeas] claims arise from a criminal defendant's underlying conviction and sentence."); *Duffus*, 174 F. 3d, at 338 ("A prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period."). The very purpose of Rule 15(c)(2), as the dissent notes, is to "qualify a statute of limitations." *Post*, at 2. But "qualify" does not mean repeal. See *Fuller* v. *Marx*, 724 F. 2d 717, 720 (CA8 1984). Given AEDPA's "finality" and "federalism" concerns, see *Williams* v. *Taylor,* 529 U. S. 420, 436 (2000); *Hicks*, 283 F. 3d, at 389, it would be anomalous to allow relation back under Rule 15(c)(2) based on a broader reading of the words "conduct, transaction, or occurrence" in federal habeas proceedings than in ordinary civil litigation, see *supra*, at 10–12.

Felix urges that an unconstrained reading of Rule 15(c)(2) is not problematic because Rule 15(a) arms district courts with "ample power" to deny leave to amend when justice so requires. See Brief for Respondent 31–33. Under that Rule, once a responsive pleading has been filed, a prisoner may amend the petition "only by leave of court or by written consent of the adverse party." Rule 15(a); see *Ellzey* v. *United States*, 324 F. 3d 521, 526 (CA7 2003) (AEDPA's aim to "expedite resolution of collateral attacks . . . should influence the exercise of discretion under Rule 15(a)—which gives the district judge the right

to disapprove proposed amendments that would unduly prolong or complicate the case."). This argument overlooks a pleader's right to amend without leave of court "any time before a responsive pleading is served." Rule 15(a). In federal habeas cases that time can be rather long, as indeed it was in the instant case. See *supra*, at 4. Under Habeas Corpus Rule 4, a petition is not immediately served on the respondent. The judge first examines the pleading to determine whether "it plainly appears . . . that the petitioner is not entitled to relief." Only if the petition survives that preliminary inspection will the judge "order the respondent to file an answer." In the interim, the petitioner may amend his pleading "as a matter of course," as Felix did in this very case. Rule 15(a). Accordingly, we do not regard Rule 15(a) as a firm check against petition amendments that present new claims dependent upon discrete facts after AEDPA's limitation period has run.

Our rejection of Felix's translation of same "conduct, transaction, or occurrence" to mean same "trial, conviction, or sentence" scarcely leaves Rule 15(c)(2) "meaningless in the habeas context," 379 F. 3d, at 615. So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.[7] Our reading is consistent with the general

_____

[7] For example, in *Mandacina* v. *United States*, 328 F. 3d 995, 1000–1001 (CA8 2003), the original petition alleged violations of *Brady* v. *Maryland*, 373 U. S. 83 (1963), while the amended petition alleged the Government's failure to disclose a particular report. Both pleadings related to evidence obtained at the same time by the same police department. The Court of Appeals approved relation back. And in *Woodward* v. *Williams*, 263 F. 3d 1135, 1142 (CA10 2001), the appeals court upheld relation back where the original petition challenged the trial court's admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted. See also 3 J. Moore, et al., Moore's Federal Practice §15.19[2], p. 15–82 (3d ed. 2004) (relation back ordinarily allowed "when the new claim is based on the

application of Rule 15(c)(2) in civil cases, see *supra*, at 10–12, with Habeas Corpus Rule 2(c), see *supra*, at 8–9, and with AEDPA's installation of a tight time line for §2254 petitions, see *supra*, at 15–16.[8]

\*      \*      \*

As to the question presented, for the reasons stated, the judgment of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

_____

same facts as the original pleading and only changes the legal theory").

[8] The dissent is concerned that our decision "creates an unfair disparity between indigent habeas petitioners and those able to afford their own counsel." *Post*, at 1; see *post,* at 11 ("[T]oday's decision . . . will fall most heavily on the shoulders of indigent habeas petitioners who can afford no counsel without the assistance of the court."). The concern is understandable, although we note that in Felix's case, counsel was appointed, and had some two and a half months to amend the petition before AEDPA's limitation period expired. See *supra*, at 4. That was ample time to add a claim based on the alleged pretrial extraction of damaging statements from Felix. Ordinarily, as we observed in *Halbert* v. *Michigan*, *ante*, at 17, n. 8, the government (federal or state) "'need not equalize economic conditions' between criminal defendants of lesser and greater wealth." (quoting *Griffin* v. *Illinois,* 351 U. S. 12, 23 (1956) (Frankfurter, J., concurring in judgment); see *Pennsylvania* v. *Finley,* 481 U. S. 551, 557 (1987) (holding that States need not provide appointed counsel in postconviction proceedings). This case, it is inescapably true, does not fit within the confined circumstances in which our decisions require appointment of counsel for an indigent litigant at a critical stage to ensure his meaningful access to justice. See *Halbert*, *ante*, at 2–4, 17, n. 8.

# SUPREME COURT OF THE UNITED STATES

_____

No. 04–563

_____

## DENEICE A. MAYLE, WARDEN, PETITIONER *v.* JACOBY LEE FELIX

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 23, 2005]

JUSTICE SOUTER, with whom JUSTICE STEVENS joins, dissenting.

This case requires the Court to decide how the relation back provision of Rule 15(c)(2) of the Federal Rules of Civil Procedure ought to apply in federal habeas corpus cases, when neither text nor precedent provides clear guidance. I see nothing in habeas law or practice that calls for the Court's narrow construction of the rule, and good reasons to go the other way, including the unfortunate consequence that the Court's view creates an unfair disparity between indigent habeas petitioners and those able to afford their own counsel. I respectfully dissent.

I

At the outset, there is need for care in understanding the narrow scope of the problem this case presents. A habeas petitioner's opportunity to amend as a matter of course, without permission of the trial court, exists only before the responsive pleading is served, and even then only once. Rule 15(a). After one amendment, or after the government files the answer or other response, assuming one is even required, see Habeas Corpus Rule 4, the prisoner may not amend without the court's leave or the government's consent, Fed. Rule Civ. Proc. 15(a). While leave to amend "shall be freely given when justice so requires,"

*ibid.*, justice does, after all, have to require it, and the District Courts will presumably say no, for example, in the face of unjustifiable delay or threatened prejudice to the State. See *Foman* v. *Davis*, 371 U. S. 178, 182 (1962); see also Brief for Professor Arthur R. Miller et al. as *Amici Curiae* 20–21 (describing reasons courts regularly deny leave to amend and citing cases); 6 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §§1487–1488 (2d ed. 1990) (hereinafter Wright & Miller) (discussing reasons leave to amend may be and often is denied, including delay and prejudice). The Court's concern for "unconstrained" recourse to petition amendments, *ante*, at 16, is thus misplaced.

The limited opportunity to amend also supplies perspective on the claim that Felix's reading of the relation back rule would undermine the 1-year limitation period of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and the statute's concomitant concern for finality of judgments. See *ante*, at 15–16. In fact, AEDPA's objectives bear little weight in the analysis, because the very point of every relation back rule is to qualify a statute of limitations, and Rule 15(c) "is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading." 6A Wright & Miller §1496, at 64. That AEDPA's statute of limitations, like any other, may be trumped by relating back when the subject of the amendment arises out of the same conduct, transaction, or occurrence described in the original pleading, does not alone help us to figure out what conduct, transaction, or occurrence is the same.

## II

Felix's disputed right to amend with relation back effect turns entirely, as the Court says, *ante*, at 9, on how narrowly or how broadly the tripartite authorization for relation back ought to be construed: whether the relevant "conduct, transaction, or occurrence"[1] to which a habeas petition refers includes the underlying trial (which resulted in the custody being challenged) or is limited to the set of facts underlying each trial ruling claimed to be constitutionally defective (in this case, the unconfronted videotaped testimony and the interrogation that produced the incriminating statement). If the former, a habeas petitioner will have the benefit of relation back for any amendment raising trial error, subject to the district judge's discretion to deny leave except for the one amendment of right; if the latter, a petitioner is effectively precluded from making any amendment unless a single trial ruling amounts to distinct errors or an underlying fact is the subject of distinct rulings, notwithstanding Congress's evident intent to provide relation back in habeas proceedings, see 28 U. S. C. §2242; Fed. Rule Civ. Proc. 81(a)(2); Habeas Corpus Rule 11.

The text alone does not tell us the answer, for either the facts specific to the claim or the trial as a whole could be the relevant "conduct, transaction, or occurrence." The Court assumes that the former approach is correct and then proceeds to explain, based on that assumption, the infirmity of a contrary approach. For example, the Court asserts that under Felix's rule, "all manner of factually and temporally unrelated conduct may be raised after the statute of limitations has run . . . ." *Ante*, at 11, n. 6. But in saying this the Court presumes that the relevant trans-

---

[1] There is a tendency toward the gestalt in reading the phrase, but the three items are distinct, and a party claiming the benefit of the rule need satisfy only one.

action is what occurred outside the courtroom. Felix's entire argument is that the proper transaction is instead what occurred in court, namely the imposition of the conviction that justifies the challenged custody. If he is right, then the Court's assertion is incorrect, for what Felix seeks to add is a claim not about "factually and temporally unrelated conduct," *ibid.*, but about conduct that occurred at the same trial as the conduct addressed in the initial petition. That newly addressed conduct will hardly be "temporally unrelated" to what was previously targeted; it likely will have occurred on the same day of trial as the original conduct or within a few days. Nor will it be "factually . . . unrelated" to the previously raised in-court conduct, for it will almost certainly involve the same judge, the same parties and attorneys, the same courtroom, and the same jurors. Again, my point is just that much of the Court's argument lacks force because it assumes that the proper transaction is what occurred outside the courtroom rather than inside, when that is the question we must answer.

The Court also cautions that "it would be anomalous to allow relation back under Rule 15(c)(2) based on a broader reading of the words 'conduct, transaction, or occurrence' in federal habeas proceedings than in ordinary civil litigation." *Ante*, at 16. The cases the Court cites to establish the scope of civil relation back, however, see *ante*, at 10–13, simply stand for the proposition that an amendment relates back only if it deals with the same conduct, transaction, or occurrence. Felix does not purport to claim anything more.[2]

_____

[2] In any event, it is not clear why it is more "capacious," *ante*, at 11, to regard a single trial lasting days or weeks as one transaction or occurrence than it is, for example, to view numerous separate protests filed with the Interstate Commerce Commission over a period of two years (each in response to a different proposed tariff amendment) as one transaction or occurrence, see *Clipper Exxpress* v. *Rocky Mountain*

At first glance, an argument for the narrow reading urged by petitioner Mayle inheres in the distinctive pleading requirement for habeas petitions. Unlike the generous notice-pleading standard for the benefit of ordinary civil plaintiffs under Federal Rule of Civil Procedure 8(a), see *Conley* v. *Gibson,* 355 U. S. 41, 47 (1957), Habeas Corpus Rule 2(c) requires habeas petitioners to "specify all the grounds for relief available," and to "state the facts supporting each ground." The Court implies that because pleading must be factually specific, the "conduct, transaction, or occurrence" of Federal Rule of Civil Procedure 15(c) must be specifically factual to a parallel degree; as the Court puts it, a habeas petitioner will plead claims "discretely," *ante*, at 14, such that each ground for relief "would delineate an 'occurrence,'" *ante*, at 15. But this does not follow; all that follows from "discret[e]" pleading is that each claim would delineate a separate ground for relief, whatever may be the conduct, transaction, or occurrence out of which the claims arise. As *Tiller* v. *Atlantic Coast Line R. Co.,* 323 U. S. 574 (1945), and the other civil cases the Court cites demonstrate, see *ante*, at 11–13, relation back is regularly allowed when an amendment raises a separate claim for relief arising out of the same transaction or occurrence, no matter how discretely that claim might be stated. Indeed, this is

_____

*Motor Tariff Bureau, Inc.*, 690 F. 2d 1240, 1260, n. 29 (CA9 1982) ("The protests involve a single transaction or occurrence" (emphasis deleted)), cited *ante*, at 11.

The Court responds that in *Clipper Exxpress* the amendment was "tied to the same operative facts as those initially alleged." *Ante*, at 11, n. 5. But as just noted, those "operative facts" (*i.e.*, the relevant transaction) consisted of a number of separate protests filed with the Interstate Commerce Commission over a period of two years, each in response to a different proposed tariff amendment. This is, to say the least, a rather expansive transaction, much more so in my view than a single trial involving (for all claims stemming from it) the same judge, the same parties, the same attorneys, the same jury, the same indictment, and so on.

what the text anticipates; Rule 15(c)(2) permits relation back when "the claim or defense" asserted in the amendment arises out of the same conduct, transaction, or occurrence set forth in the original pleading. That is, the same conduct, transaction, or occurrence can support multiple, discrete claims for relief.

Nor is there any policy underlying the particular habeas pleading rule that requires a more grudging relation back standard. As the Court concedes, *ante*, at 9, the purpose of the heightened pleading standard in habeas cases is to help a district court weed out frivolous petitions before calling upon the State to answer. See Advisory Committee's Note on Habeas Corpus Rule 2, 28 U. S. C., p. 469; Advisory Committee Note on Rule 4, *id.,* at 471 ("[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer"); 1 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure §11.6, p. 573, n. 3 (4th ed. 2001) (hereinafter Hertz & Liebman) ("[F]act pleading, like other habeas corpus rules and practices, enables courts . . . to separate substantial petitions from insubstantial ones quickly and without need of adversary proceedings"); Note, Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1175 (1970) ("The justification for stringent pleading requirements in habeas corpus is thought to lie in the need to protect the courts from the burden of entertaining frivolous applications"). Identifying meritless claims has nothing to do with the effect of amendment to initial petitions for relief, except in the remote sense that an amendment will require a district judge to examine one more item. But there is no claim here that Federal Rule of Civil Procedure 15(c) has to be narrow to protect judges; the government is objecting because it wants fewer claims to defend, and that objection is unrelated to the habeas

fact-pleading standard.[3]

While considerations based on habeas pleading fail to pan out with support for Mayle's restricted reading of Rule 15(c), several reasons convince me that Felix's reading is right. Most obvious is the fact that both of his claims can easily fit within the same "transaction or occurrence," understood as a trial ending in conviction resulting in a single ultimate injury of unlawful custody. ("Conduct" sounds closer to underlying facts, perhaps, but Rule 15(c) turns on either conduct, transaction, or occurrence.) The Court acknowledges that Felix's claims regarding his own interrogation and the videotaped testimony of witness Kenneth Williams are potentially actionable here only because the resulting incriminating statements were introduced at trial, *ante*, at 14, but argues that they nevertheless arise out of separate transactions or occurrences because they rest on distinct "essential predicate[s]," *ibid*., meaning pretrial acts. It is certainly true that the claims depend on those distinct pretrial acts, but the claims depend equally on the specified trial errors, without which there would be no habeas claim: without the introduction of each set of statements at trial, Felix would have no argument for habeas relief, regardless of what happened outside of court.[4] The Court's own opin-

_____

[3] Neither does the warning on the model habeas petition (that failure to set forth every ground for relief may preclude the presentation of additional grounds later) tell us anything about relation back. The Court implies that it does, *ante*, at 9, but the language on the form says nothing about relation back, and if the Court's implication were correct then the warning would also bar amendments filed within the limitations period.

[4] By contrast, use at trial of the fruits of the alleged police misconduct would not be a prerequisite to success in an action under Rev. Stat. §1979, 42 U. S. C. §1983, because such an action would indeed be challenging the conduct itself rather than the custody obtained by use at trial of the fruits of that conduct. Cf. *ante*, at 12 (citing *Jackson* v. *Suffolk County Homicide Bureau*, 135 F. 3d 254 (CA2 1998), where the Court of Appeals, in a §1983 case, concluded that two different in-

ion demonstrates this, as its descriptions of Felix's two claims refer not only to what happened outside court but also to what happened at trial, and they specifically ground the alleged constitutional violations on the latter. See *ante*, at 1 ("He initially alleged . . . that the admission into evidence of videotaped testimony of a witness for the prosecution violated his rights under the Sixth Amendment's Confrontation Clause"); *ante*, at 2 ("He asserted that, in the course of pretrial interrogation, the police used coercive tactics to obtain damaging statements from him, and that admission of those statements at trial violated his Fifth Amendment right against self-incrimination").[5] Moreover, habeas review will of course look at more of the underlying trial record than just the ruling admitting the disputed evidence, for Felix's claims like a great many others will call for examining the trial record as a whole for signs of requisite prejudice or reversible error.[6]  Here, for

---

stances of postarrest police conduct were not part of a single transaction or occurrence).  The Court's analysis thus lies in some tension with our understanding that the signal, defining feature setting habeas cases apart from other tort claims against the State is that they "necessarily demonstrat[e] the invalidity of the conviction," *Heck* v. *Humphrey,* 512 U. S. 477, 481–482 (1994); see generally *Wilkinson* v. *Dotson,* 544 U. S. \_\_\_, \_\_\_ (2005) (slip op., at 3–7).

[5] There are other examples of the Court's describing Felix's claims with reference to the trial.  See *ante*, at 3 ("Felix's Fifth Amendment claim rested on the prosecution's introduction of statements Felix made during pretrial police interrogation. . . .  His Sixth Amendment claim related to the admission of the videotaped statements prosecution witness Kenneth Williams made at a jailhouse interview"); *ante*, at 4 ("On direct appeal, Felix urged . . . that the admission of Williams' videotaped statements violated Felix's constitutional right to confront the witnesses against him.  He did not, however, argue that admission of his own pretrial statements violated his right to protection against self-incrimination").

[6] See *Neder* v. *United States,* 527 U. S. 1, 18 (1999) ("The erroneous admission of evidence in violation of the Fifth Amendment's guarantee against self-incrimination, and the erroneous exclusion of evidence in violation of the right to confront witnesses guaranteed by the Sixth

example, if a court were to conclude that introducing Felix's statements did violate the Fifth Amendment, relief would still turn on whether the error was harmless. This would call for a careful look at the other evidence admitted at trial, including the statements said to have come in contrary to the Confrontation Clause. In sum, Felix's claims are not outside the text of Rule 15(c)(2).

Then there are a number of indications that Congress would not want the rule read narrowly, the first centering on the word "transaction." That term not only goes to the breadth of relation back, but also to the scope of claim preclusion. *E.g.*, *Kremer* v. *Chemical Constr. Corp.,* 456 U. S. 461, 482, n. 22 (1982) ("Res judicata has recently been taken to bar claims arising from the same transaction even if brought under different statutes . . ."); accord, 1 Restatement (Second) of Judgments §24(1) (1980) ("[T]he claim extinguished includes all rights . . . with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose"). For purposes of claim preclusion in habeas cases, the scope of "transaction" is crucial in applying AEDPA's limitation on second or successive petitions: with very narrow exceptions, federal habeas limits a prisoner to only one petition chal-

_____

Amendment are both subject to harmless-error analysis under our cases" (citations omitted)); *Penry* v. *Johnson,* 532 U. S. 782, 795 (2001) (success on Fifth Amendment self-incrimination claim in habeas case requires showing that the error had "substantial and injurious effect or influence in determining the jury's verdict" (internal quotation marks omitted)); see also, *e.g.*, *Banks* v. *Dretke,* 540 U. S. 668, 691 (2004) (elements of prosecutorial misconduct claim under *Brady* v. *Maryland,* 373 U. S. 83 (1963), include showing of prejudice); *Donnelly* v. *DeChristoforo,* 416 U. S. 637, 643 (1974) (improper prosecutorial comment not reversible error unless remarks "so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process"); *Strickland* v. *Washington,* 466 U. S. 668, 695 (1984) (to find prejudice for purposes of ineffective assistance claim, court "must consider the totality of the evidence before the judge or jury").

lenging his conviction or sentence.    See 28 U. S. C.
§2244(b)(1).[7]  The provisions limiting second or successive
habeas petitions regard the relevant "transaction" for
purposes of habeas claim preclusion as the trial that
yielded the conviction or sentence under attack; once a
challenge to that conviction or sentence has been rejected,
other challenges are barred even if they raise different
claims.  By contrast, under the Court's view of Rule 15(c)
that the relevant "transaction" is the facts or conduct
underlying each discrete claim, a prisoner should be al-
lowed to file a second habeas petition so long as it is based
on different underlying facts or conduct (*i.e.*, on what the
Court considers a separate "transaction").  The Court thus
adopts, for purposes of relation back in habeas cases, a
definition of "transaction" different from the one Congress
apparently intended for purposes of claim preclusion in
habeas cases.  Judge Easterbrook explained this tension in
*Ellzey* v. *United States*, 324 F. 3d 521 (CA7 2003), and the
Court offers no evidence that Congress would have de-
creed any such apparent anomaly within the body of ha-
beas standards.[8]

  There is, rather, a fair indication that Congress would
have intended otherwise, in the fact that it has already
placed limits on the right of some habeas petitioners to

————————

  [7] The Court asserts that my argument here "builds . . . on an appar-
ent assumption that claim preclusion operates in habeas cases largely
as it does in mine-run civil cases." *Ante*, at 15, n. 6.  In actuality, the
argument rests only on a fact we have previously recognized: that
AEDPA's "restrictions on successive petitions constitute a modified res
judicata rule . . . ." *Felker* v. *Turpin*, 518 U. S. 651, 664 (1996).

  [8] The Court is mistaken in stating that I "would read Rule 15(c)(2)'s
words, 'conduct, transaction, or occurrence,' into . . . 28 U. S. C.
§§2244(b) and 2255, ¶8 . . . ." *Ante*, at 15, n. 6.  What I would do is
adopt, for purposes of reconciling Rule 15(c)(2) with AEDPA's one-year
statute of limitations, a definition of "transaction" that is consistent
with what other sections of AEDPA, those governing second or succes-
sive petitions, functionally regard as the relevant "transaction."

amend their petitions. In Chapter 154 of Title 28, providing special procedures for habeas cases brought by petitioners subject to capital sentences in certain States, Congress specifically prohibited amendment of the original habeas petitions after the filing of the answer, except on the grounds specified for second or successive petitions under 28 U. S. C. §2244(b). See §2266(b)(3)(B). Congress's intent to limit capital petitioners' opportunity to amend (and thus to take advantage of relation back) makes sense owing to capital petitioners' incentive for delay, but the provision it enacted also helps us make sense of Rule 15(c) in the usual habeas case where a prisoner has no incentive to string the process out. For Congress has shown not only that it knows how to limit amendment in habeas cases, but also that it specifically considered the subject of limiting amendment in such cases and chose not to limit amendment in the ordinary ones.

The final reason to view the trial as the relevant "transaction" in Rule 15(c)(2) lies in the real consequences of today's decision, which will fall most heavily on the shoulders of indigent habeas petitioners who can afford no counsel without the assistance of the court. In practical terms, the significance of the right to amend arises from the fact that in the overwhelming majority of cases, the original petition is the work of a *pro se* petitioner. See *Duncan* v. *Walker,* 533 U. S. 167, 191 (2001) (BREYER, J., dissenting) (93% of habeas petitioners in study were *pro se* (citing U. S. Dept. of Justice, Office of Justice Programs, Bureau of Justice Statistics, Federal Habeas Corpus Review: Challenging State Court Criminal Convictions 14 (1995))); 1 Hertz & Liebman, §12.2, at 601 ("[N]early all" federal habeas petitioners commence proceedings either without legal assistance or with only the aid of a fellow inmate or a volunteer attorney). Unless required by statute, appointment of counsel is most often a matter of discretion on the part of the court. The district judge may

well choose not to exercise that discretion unless and until a habeas proceeding advances to the stage of discovery or evidentiary hearing. See Habeas Corpus Rule 6(a) (requiring appointment of counsel for indigent petitioner "[i]f necessary for effective discovery"); Rule 8(c) (requiring appointment of counsel "[i]f an evidentiary hearing is warranted"). And the judge almost certainly will not appoint counsel until after the preliminary review of the petition to see whether it plainly warrants dismissal. See Rule 4. Where a petition (even in its *pro se* form) has survived this review by showing enough merit to justify appointing counsel, it makes no sense to say that counsel (appointed because of that apparent merit) should be precluded from exercising professional judgment when that judgment calls for adding a new ground for relief that would relate back to the filing of the original petition. For by hobbling counsel this way, the Court limits the capacity of appointed counsel to provide the professional service that a paid lawyer, hired at the outset, can give a client. The lawyer hired at the start of the proceeding will be able to draft an original petition containing all the claims revealed to his trained eye; if the same lawyer is appointed by the court only after the petitioner has demonstrated some merit in an original *pro se* filing, he and his prisoner client will have no right to state all claims by adding to the original petition, unless the lawyer happens to be appointed and able to get up to speed before the statute of limitations runs out. The rule the Court adopts today may not make much difference to prisoners with enough money to hire their own counsel; but it will matter a great deal to poor prisoners who need appointed counsel to see and plead facts showing a colorable basis for relief. [9]

_____

[9] It is not that I see the Court's rule as constitutionally troubling. But this case requires us to apply text that is ambiguous, and the Court's resolution of that ambiguity is based on the assumption that when

The Court of Appeals got it right, and I respectfully dissent.

—————

Congress authorized the appointment of counsel in habeas cases, it would have intended the appointed lawyer to have one hand tied behind his back, as compared with an attorney hired by a prisoner with money.  That is not in my view a sound assumption.  (The Court also observes that in this case counsel had plenty of time to file an amended petition, but that fact cannot drive this decision, for the rule the Court adopts today will of course apply in cases other than this one.)